## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:                              )
                                    )
**ROBERT STORM,**                   )        **CHAPTER 7**
                                    )        **CASE NO. 23-55028-lrc**
      Debtor.              )
                                    )
_____     )
                                    )
**MASHALA INVESTMENTS, LLC,**       )
                                    )
      Plaintiff,           )
**v.**                              )        **ADVERSARY PROCEEDING**
                                    )        **NO. _____**
**ROBERT STORM,**                   )
                                    )
      Defendant.           )
_____     )

## COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE UNDER 11 U.S.C. §727 AND COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF CERTAIN DEBTS UNDER 11 U.S.C. §523

COMES NOW, Mashala Investments, LLC, Plaintiff in the above-styled action, and hereby files this Complaint Objecting to Debtor's Discharge under 11 U.S.C. §727 and To Determine The Dischargeability Of Certain Debts Under 11 U.S.C. §523, and respectfully states the following:

## PARTIES AND JURISDICTION

1.

Mashala Investments, LLC (hereinafter "Plaintiff") is a creditor and party in interest in this bankruptcy proceeding.

2.

Robert Storm (hereinafter "Defendant") is subject to the Involuntary Bankruptcy Petition

{00244211 3 }

under 11 U.S.C. Chapter 7 filed on May 31, 2023.

3.

On July 14, 2023, the Court entered its *Order For Relief In Involuntary Case* in the above styled  bankruptcy case.

4.

Defendant is subject to the jurisdiction of this Court.

5.

This Adversary Proceeding is being brought in connection with Debtor's case under Chapter 7 of Title 11, Case Number 23-55028 now pending in this Court. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6.

This Adversary Proceeding constitutes a core proceeding as that term is defined under 28 U.S.C. § 157(b)(2)(I) and 28 U.S.C. § 157(b)(2)(J).

7.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408, 1409.

## FACTUAL BACKGROUND

8.

Defendant is the sole owner and sole principal of BinaNat Capital, LLC, a Georgia limited liability company ("BinaNat").[1]

9.

BinaNat is in the business of hard money loans, which is essentially providing lending for real estate to third-party borrowers ("Obligor(s)") that may or may not fit the conventional

---

[1] This case is ancillary to BinaNat's concurrent involuntary Chapter 7 case pending before this Court, being case number 23-55019-LRC. The Order for Relief was entered in BinaNat's bankruptcy case on September 22, 2023 (D.E. 38).

banking system.

10.

Defendant is the Manager of BinaNat and is authorized to bind BinaNat to agreements.

11.

The money for the hard money loans made by BinaNat came from investors, such as Plaintiff.

12.

Each hard money loan was secured by real property.

13.

Defendant approached Plaintiff to do business with BinaNat and become an investor in the hard money loans.

14.

Defendant represented to Plaintiff that a written servicing agreement ("Servicing Agreement") would be entered for each hard money loan. A true and correct copy of a Servicing Agreement is attached hereto and incorporated herein by reference thereto as **Exhibit "A"**, and serves as a specimen. Except for the date, underlying third-party borrower, loan amount and secured property, the terms of each Servicing Agreement were identical.

15.

Defendant signed each Servicing Agreement twice, individually as a guarantor, and in his representative capacity as Manager for BinaNat.

16.

Plaintiff provided funds to BinaNat over several years in the aggregate principal amount of $704,250 for 17 hard money loans made by BinaNat to Obligors.

17.

None of the hard money loans have been repaid to Plaintiff, and Defendant fully admits that BinaNat owes Plaintiff $704,250.00 for the principal amount of the aggregate hard money loans funded by Plaintiff as guaranteed by Defendant.

18.

Defendant admits that he took Plaintiff's funds and did not use it for the purpose that it was originally intended for 3 hard money loans.

19.

Defendant admits that he used Plaintiff's funds to make 14 hard money loans, and when these loans were repaid by the Obligors, he failed to inform Plaintiff of the repayment, and he used the repaid funds for other purposes instead of repaying Plaintiff.

20.

BinaNat made regular interest payments under the Servicing Agreements to Plaintiff but ceased making such payments on April 5, 2022 when the Lawsuit (identified below) was commenced. Aggregate interest in the amount of $105,539.69[2] has accrued since BinaNat ceased making such payments to Plaintiff.

21.

Defendant and BinaNat made regular interest payments to Plaintiff for the intent and purpose of tricking Plaintiff by concealing the fact that BinaNat either failed to make 3 hard money loans or to conceal the fact that Obligors repaid the 14 hard money loans to BinaNat and that Defendant and BinaNat used the repaid funds for purposes other than repaying Plaintiff.

22.

On February 28, 2022, Plaintiff delivered its written demand to Defendant and BinaNat.

---

[2] Interest is calculated from April 5, 2022 through May 31, 2023.

A true and correct copy of the demand is attached hereto and incorporated herein by reference thereto as **Exhibit "B"**.

23.

On April 5, 2022, Plaintiff commenced a civil action in the Fulton County, Georgia Superior Court against Defendant, being civil action number 2022CV363021, asserting among other claims a fraud claim against Defendant (the "Lawsuit"). A true and correct copy of the Fulton County complaint is attached hereto and incorporated herein by reference thereto as collective **Exhibit "C"**.

24.

Defendant answered the Lawsuit[3] and fully litigated it until February 24, 2023 when the Fulton County Superior Court entered an order granting summary judgment in favor of Plaintiff and against Defendant and BinaNat ("Order"). A judgment for fraud was entered on March 2, 2023 in favor of Plaintiff and against Defendant and BinaNat in the amount of $845,863.40 ("Judgment"). A true and correct copy of the Order and Judgment is attached hereto and incorporated herein by reference thereto as collective **Exhibit "D-1" and Exhibit "D-2"**, respectively.

25.

The Order included findings of fact (which are outlined in this Complaint) and conclusions of law showing, among other things, that Plaintiff made out a prima facie case for fraud in paragraphs 1, 11-18 of the Conclusions of Law section thereof. Specifically, the Order states:

> 1.      Mashala made a prima facie case that … (c) Defendants defrauded Mashala. Defendants failed to point to specific evidence giving rise to a triable

---

[3] A true and correct copy of the Defendant's answer is attached hereto and incorporated herein by reference thereto as collective **Exhibit "D"**.

issue and thus failed to rebut or pierce Mashala's case.

11.    The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff. Kilroy v. Alpharetta Fitness, Inc., 295 Ga. App. 274, 275–76, 671 S.E.2d 312, 313 (2008). While in many instances mere silence cannot be made the basis of fraud, yet, where the circumstances are of such a nature as to impose a duty upon one to speak, and where he deliberately fails to do so, his neglect will be deemed a deliberate suppression of the truth, and will amount to constructive, if not actual, fraud. Crossing Park Props., LLC v. Archer Capital Fund, LP, 311 Ga. App. 177, 182, 715 S.E.2d 444, 448 (2011).

12.    Fraud is exceedingly subtle in its nature. There are infinite means by which it can be accomplished. In its conception human ingenuity is limitless in its capabilities. It is therefore impossible to state any general rule by which particular frauds are to be identified. Classification is almost, if not quite, impossible. It may be perpetrated by willful misrepresentations made by one person to another, with a design to mislead and which do actually mislead another. It may be perpetrated by signs and tricks, and even silence may in some instances amount to fraud." Wood v. Cincinnati Safe & Lock Co., 96 Ga. 120, 123-24 (22 SE 909) (1895).

13.    Concealment of material facts may amount to fraud . . . where the concealment is of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover [cit.]; and misrepresentation may be perpetrated by acts as well as words, and by artifices designed to mislead. [Cit.] Woodall v. Orkin Exterminating Co., 175 Ga. App. 83, 84, 332 S.E.2d 173, 174 (1985).

14.    "Concealment per se amounts to actual fraud when from any reason one party has a right to expect full communication of the facts from another. This is a well-settled principle recognized both by the civil and the moral law." Id., 175 Ga. App. at 85.

15.    Storm failed to notify Mashala when loans funded by Mashala failed to close and where BinaNat was repaid for loans that were funded by Mashala. Storm remained silent to mislead Mashala so that BinaNat and Storm could use Mashala's money for other purposes such as business expenses and interest payments. None of these purposes were ever authorized or agreed to by Mashala.

16.    BinaNat and Storm also took affirmative steps by continuing to deliver interest payments to hide the fact the loans were repaid. These steps were taken to trick Mashala by concealing the fact that (1) the loan was never made with Mashala's funds, or (2) BinaNat had been repaid the underlying loans by or

for the Obligers.

17.    Storm and BinaNat are liable to Mashala for fraud in the following amounts:

| | |
|---|---|
| Principal: | $704,250.00 |
| Interest: | $ 80,871.38 |
| Court Costs: | $ 308.73 |
| Attorney's Fees and Costs: | $ 60,433.29 |
| TOTAL: | $845,863.40 |

18.    Defendants having failed to point to specific evidence giving rise to a triable issue and thus failed to rebut or pierce Mashala's case for breach of contract, conversion and fraud, the Court orders as follows:

### ORDER OF THE COURT

IT IS HEREBY ORDERED that summary judgment is hereby GRANTED in favor of Mashala against Defendants as to Mashala's claims for breach of contract, conversion, fraud and attorney's fees, as there is no genuine issue as to any material fact. Mashala shall elect its remedy within ten (10) business days from the entry of this Order, whereupon a judgment shall immediately be issued and entered and the Clerk shall immediately issue and record in the public lien records for Fulton County a Writ of Fieri Facias in favor of Mashala. A hearing to determine the remaining damages in favor [of] Mashala shall promptly be scheduled.

26.

A Writ of Fieri Facias in favor of Plaintiff was recorded in Fulton County on March 14, 2023 in Lien Book 5615, page 269 Fulton County. A true and correct copy of said Writ of Fieri Facias is attached hereto and incorporated herein by reference thereto as **Exhibit "E"**.

27.

Plaintiff is a Georgia limited liability company, and all but 2 of the 17 hard money loan transactions involved Georgia properties.

28.

In the Lawsuit, Defendant had the opportunity to fully litigate Plaintiff's fraud and concealment claims set forth in this Complaint.

29.

In the Lawsuit, Defendant in fact fully litigated Plaintiff's fraud and concealment claims set forth in this Complaint.

30.

Defendant, through his counsel, participated in the Fultron County, Georgia Superior Court summary judgment hearing that resulted in the Order.

31.

The elements of fraud in this Court are the same as the state law applied by the Fulton County, Georgia Superior Court in the Lawsuit. In re Lowery, 440 B.R. 914, 924 (Bankr. N.D. Ga. 2010).

32.

The Fulton County, Georgia Superior Court made the determination that Defendant defrauded Plaintiff.

33.

The findings of fact and conclusions of law contained in the Order establish in this Court that Defendant defrauded Plaintiff.

**<u>COUNT ONE</u>**

**<u>Fraud under 11 U.S.C. § 727(a)(4)(C)</u>**

34.

Plaintiff restates all matters set forth in the preceding paragraph 1 though paragraph 33 as if they were fully set forth below and incorporates the same by reference herein.

35.

Defendant, individually and in his capacity as the owner and sole principal of BinaNat

{00244211 3 }                                                    - 8 -

Capital, fraudulently received or obtained money from Plaintiff in violation of 11 U.S.C. § 727(a)(4)(C).

36.

Defendant, individually and in his capacity as the owner and sole principal of BinaNat Capital, concealed from Plaintiff the fact that most or all of the collateral securing the underlying hard money loans were conveyed or transferred in order to avoid repayment of the amount due and owing to Plaintiff to trick Plaintiff into forbearing to exercise its rights in violation of 11 U.S.C. § 727(a)(4)(C).

37.

Defendant, individually and in his capacity as the owner and sole principal of BinaNat Capital, concealed from Plaintiff the unmade loans, the repaid loans, and transferred collateral in order to trick and mislead Plaintiff into believing that all of the hard money loans were made and were secured by collateral, that no loans had been repaid, and that no collateral had been transferred to trick Plaintiff into forbearing to exercise its rights in violation of 11 U.S.C. § 727(a)(4)(C).

38.

Defendant, individually and in his capacity as the owner and sole principal of BinaNat Capital, concealed from Plaintiff that funds provided by Plaintiff were used by Defendant for other purposes that were never authorized by Plaintiff to trick Plaintiff into forbearing to exercise its rights in violation of 11 U.S.C. § 727(a)(4)(C).

39.

Each of the occurrences set forth in paragraphs 35, 36, 37, and 45 hereof were part of scheme of concealment and fraud to trick and mislead Plaintiff into not suspecting such

fraudulent acts.

40.

Each of the occurrences set forth in paragraphs 35, 36, 37, and 45 hereof were for the purpose of inducing Plaintiff to provide funds for the hard money loans.

41.

Each of the occurrences set forth in paragraphs 35, 36, 37, and 45 hereof were for the purpose of tricking Plaintiff into forbearing to exercise its rights in violation of 11 U.S.C. § 727(a)(4)(C).

42.

Each of the occurrences set forth in paragraphs 35, 36, 37, and 45 hereof were for the sole benefit of Defendant.

43.

Defendant, individually and in his capacity as the owner and sole principal of BinaNat Capital, has knowingly and fraudulently received and obtained money from Plaintiff, and withheld and used Plaintiff's money, using trickery and concealment to induce Plaintiff into forbearing to exercise its rights in violation of 11 U.S.C. § 727(a)(4)(C). Therefore, pursuant to 11 U.S.C. § 727(a)(4)(C), Defendant is not entitled to receive a discharge in this proceeding.

## **COUNT TWO**

### **Fraud and Concealment under 11 U.S.C. § 523**

44.

Plaintiff restates all matters set forth in the preceding paragraph 1 though paragraph 43 as if they were fully set forth below and incorporates the same by reference herein.

{00244211 3 }                                                    - 10 -

45.

Defendant, individually and in his capacity as the owner and sole principal of BinaNat Capital, concealed from Plaintiff the fact that most or all of the collateral securing the underlying hard money loans were conveyed or transferred in order to avoid repayment of the amount due and owing to Plaintiff.

46.

Defendant, individually and in his capacity as the owner and sole principal of BinaNat Capital, concealed from Plaintiff the unmade loans, the repaid loans, and transferred collateral in order to trick and mislead Plaintiff into believing that all hard money loans were made and were secured by collateral, that no loans had been repaid, and that no collateral had been transferred.

47.

Defendant, individually and in his capacity as the owner and sole principal of BinaNat Capital, concealed from Plaintiff that funds provided by Plaintiff were used by Defendant for other purposes that were never authorized by Plaintiff.

48.

Each of the occurrences set forth in paragraphs 45, 46, and 47 hereof were part of scheme of concealment and fraud to trick and mislead Plaintiff into not suspecting such fraudulent acts.

49.

Each of the occurrences set forth in paragraphs 45, 46, and 47 hereof were for the purpose of inducing Plaintiff to provide funds for the hard money loans.

50.

Each of the occurrences set forth in paragraphs 45, 46, and 47 hereof were for the sole benefit of Defendant.

{00244211 3 }                                          - 11 -

51.

Defendant's concealment was intentional to trick and mislead Plaintiff in order to avoid repayment of the amounts due and owing to Plaintiff.

52.

Defendant's concealment was intentional to trick and induce Plaintiff not to seek the recovery of amounts due and owing to it from Defendant.

53.

Defendant has committed the acts specified in 11 U.S.C.§§ 523(a)(2)(A) and § 523(a)(4).

54.

The requirements for establishing a fraud claim under Georgia law are sufficiently identical to the elements required for a showing of fraud pursuant to 11 U.S.C. § 523(a)(2)(A). In re Lowery, 440 B.R. 914, 924 (Bankr. N.D. Ga. 2010).

55.

At all times relevant hereto, Defendant knew his trickery and concealment would mislead Plaintiff into believing that no loans had been repaid and that no collateral had been transferred.

56.

Plaintiff seeks a determination that the debt owed by Defendant to Plaintiff is non-dischargeable pursuant to 11 U.S.C.§ 523(a)(2)(A) and § 523(a)(4).

WHEREFORE, Plaintiff prays:

(a) that process issue, and that Defendant be served as provided by law;

(b) that the Court enter an order denying Defendant's discharge in the above styled bankruptcy case under Count One;

(c) that the Court enter an order determining that the debt owed by Defendant to Plaintiff

is non-dischargeable or otherwise excluded from discharge in the above styled bankruptcy case

under Count Two; and

(d) for such other and further relief as the Court deems equitable and just.

**FILED** this 27th day of October 2023.

Respectfully submitted,

**FLYNN & GOTTLIEB, P.A.**

/s/ Jon A. Gottlieb
Jon A. Gottlieb, Esq.
Georgia Bar No. 303060
Attorneys for Plaintiff Mashala Investments, LLC

800 Johnson Ferry Road, N.E.
Atlanta, Georgia 30342-1417
(404) 497-8000 Telephone
(404) 497-8009 FAX
jong@lawfg.com

# EXHIBIT "A"



**BINANAT CAPITAL**
SERVICING AGREEMENT

**Loan dated: 3/13/2019**
**Borrower: Mario LaLand**
**Guarantor: Mario LaLand**
**Security: 1040 Edgewater Drive, Sandy Springs, GA 30328**
**Total Loan Amount: $572,000.00**

**WHEREAS**, BinaNat Capital, LLC ("**BinaNat**") and Mashala Investments, LLC, ("**MASHALA**") entered into a Transfer and Assignment dated as of Marh 13th, **2019** (the "Assignment"), pursuant to which **BinaNat** sold to **MASHALA** all beneficial right, title and interest in and to **13.11% ($75,000.00)** of the loan described above (the "Loan").

**WHEREAS, MASHALA** has agreed to retain **BinaNat** as the servicer for the Loan and **BinaNat** has agreed to service the Loan all on the terms and conditions set forth herein; and

**WHEREAS**, each of BinaNat and its Member, **Robert Storm**, has agreed to guaranty to **MASHALA** the performance of all obligations of any and all obligors and/or guarantors under the Loan (each, an "Obligor" and, collectively, "Obligors").

**NOW THEREFORE**, in consideration of the mutual promises contained herein and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1) **Term**. This term of this Servicing Agreement shall commence as of the date of the Assignment and will terminate on the **date the Loan (including all principal and accrued interest) is paid to MASHALA in full** (the "Termination Date") unless terminated sooner by both parties upon mutual written agreement.

2) **Servicing Activities**.

    a. **BinaNat** shall service and administer the Loan and manage, dispose of and otherwise deal with any collateral securing the Loan, in each case for the direct benefit of **MASHALA**. **BinaNat** shall have the full power and authority to cause to be done any and all things for the benefit of MASHALA in connection with the servicing and administration of the Loan that BinaNat may reasonably deem necessary or desirable, including without limitation foreclosing on the security for the Loan noted above (the "Security). The Loan is secured by a first priority deed to secure debt encumbering the Security and recorded in the records of the superior court in which such Security is located. BinaNat shall hold the escrow funds noted above in trust for repairs and renovations to the Security and shall disburse said escrow funds pursuant to the terms of the Loan.

    b. **BinaNat** shall on behalf of **MASHALA** diligently collect all payment due by the Obligor(s) under the Loan as they become due, including but not limited to (i) principal, (ii) interest, (iii) advances for hazard insurance premiums, payments with regard to prior liens, taxes, legal fees, foreclosure costs, and other miscellaneous advances, (iv) late charges, and (v) NSF charges. **BinaNat** shall remit to **MASHALA** all collections net of fees and advances due to BinaNat under this Servicing Agreement. If such remittance is not received by **MASHALA** on or before the **10th** day of each month in which such payments are due and payable under the Loan, **BinaNat** shall be assessed a late fee of ten percent (10%) of the amount due.

*c. BinaNat shall pay to MASHALA in connection with the Loan closing and Assignment a funding fee of $1,500.00.*

3) **Compensation.** During the term of this Servicing Agreement, **BinaNat** shall be entitled to retain as compensation for its servicing of the Loan an amount equal to two percent (2%) of the Loan payments remitted to **BinaNat** in addition to any other fees paid to **BinaNat** as noted on the Loan closing statement.

4) **Default. BinaNat** shall be responsible for making all payments due to **MASHALA** under or in connection with the Loan (net of fees and advances due to **BinaNat**) regardless of collection from the Obligors. If **BinaNat** fails to remit any monthly payment (and late fee, if any) to **MASHALA** within ten (10) days of the due date as stated in the Loan, then **MASHALA** may, upon written notice to **BinaNat**, collect such payment and/or any future payments directly from the Loan obligor, and/or terminate the provisions of Section 1-3 above, in any case without limiting any rights available to **MASHALA** under Section 5 below or otherwise arising under this Servicing Agreement.

5) **Guaranty.** Each of **BinaNat**, a Georgia Limited Liability company and **Robert Storm**, an individual resident of the state of Florida (each, a "Guarantor" and, collectively, "Guarantors") absolutely, irrevocably and unconditionally guarantees to **MASHALA** the due, full and punctual performance of all of obligations of the Obligors under and in connection with the Loan (including but not limited to any obligation for the payment of money) (the "Guaranteed Obligations"). Notwithstanding the foregoing, **MASHALA** may demand payment and/or performance of the Guaranteed Obligations, pursue any right or remedy it may have under or in connection with the Loan, or commence any suit or other proceeding, simultaneously against Guarantors and any Obligor. Guarantors shall remain bound by this guaranty, without notice to or further assent by **BinaNat**, notwithstanding any (i) agreement between any Obligor and **MASHALA** that, from time to time, amends, extends, supplements or otherwise modifies the Loan, or (ii) agreement or assent by **MASHALA** to delay or extend the date on which any payment must be made, or performance of any other obligation must be completed, by any Obligor pursuant to the Loan. Guarantor expressly waives (i) protest, and (ii) notice of acceptance of this guaranty by Company, and (iii) demand for payment or performance of any of the Guaranteed Obligations. Guarantors waive any right that either of them might have to challenge the amount or validity of any amounts acknowledged by any Obligor to be due under the Loan or determined to be due under the Loan pursuant to any dispute resolution procedures set forth therein; provided that Guarantors reserve all rights and other defenses otherwise available to the Obligors with respect to the Guaranteed Obligations except defenses arising from the bankruptcy, insolvency, dissolution or liquidation of any Obligor, which defenses are waived by Guarantors, and any other defenses expressly waived in this guaranty. Guarantors agree that **MASHALA** may enforce this guaranty without the necessity at any time of resorting to or exhausting any other remedy, security or collateral. This guaranty is a continuing guaranty of performance and payment and not merely of collection. Accordingly, **MASHALA** shall not be obligated or required before enforcing this guaranty against Guarantors: (i) to pursue any right or remedy **MASHALA** may have against any Obligor, or any other person or commence any suit or other proceeding against any Obligor or any other person in any court or other tribunal; or (ii) to make any claim in a liquidation or bankruptcy of any Obligor or any other person. The guaranty of performance of the Guaranteed Obligations hereunder is a continuing guaranty of Guarantors. Accordingly, this guaranty shall remain in full force and effect until such time as all the Guaranteed Obligations have been discharged in full.

6) **Limitation of Liability.** The Assignment of the Loan is made on a full recourse basis, and the Guarantors shall be personally liable to **MASHALA** for an amount up to the full amount of all principal and accrued interest under the Loan, plus any costs and expenses (including court costs and attorneys' fees) incurred by MASHALA in collecting any amounts due under this servicing Agreement or the Loan (the "Liability Cap"). Notwithstanding anything else set forth herein, Guarantors' liability for any and all claims arising under this Servicing Agreement under any legal theory shall not exceed the Liability Cap.

**7) Reasonable Access. BinaNat** shall give **MASHALA** and its authorized representatives reasonable access to all documents, files, books, records and accounts, related to the Loan, and permit MASHALA to make such inspections thereof as MASHALA may reasonably request during normal business hours, *provided, however*, that such investigation or inspection shall be at **MASHALA'** expense and conducted in such a manner as to not interfere unreasonably with **BinaNat's** business operations.

**8) Representations and Warranties.** Each Guarantor represents, warrants and covenants as follows:

a. **BinaNat** (i) is duly organized, validly existing and in good standing under the laws of its jurisdiction, (ii) is duly qualified and in good standing in every applicable jurisdiction in which it would be qualified in order to perform any of its obligations under this Servicing Agreement, (iii) has the corporate power to own its property and the authority to carry on the business as conducted as of the date hereof, and (iv) has the corporate power to enter into this Servicing Agreement.

b. The execution, delivery and performance of this Servicing Agreement have been duly authorized by each Guarantor and each constitutes a valid and binding obligation of each Guarantor, enforceable against each Guarantor in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, fraudulent conveyance, fraudulent transfer, reorganization, moratorium, or other similar laws from time to time in effect affecting the enforcement of creditors' rights generally.

c. The execution, delivery and performance of this Servicing Agreement will not conflict with or result in a breach of any of the terms, conditions or provisions of, give rise to a right of termination under, constitute a default under, or result in any violation of, the organizational documents of either Guarantor or any mortgage, agreement, contract, instrument, order, judgment, decree, statute, law, rule or regulation to which the either Guarantor any of its respective properties is subject as of the date hereof.

d. The obligations of each Guarantor under this Servicing Agreement are direct and unconditional obligations of each Guarantor and shall rank *pari passu*, without any preference among themselves, and at least equally and ratably in all respects with all its other present and future unsecured and unsubordinated indebtedness.

e. No authorizations or other consents, approvals or notices of or to any person or entity are required in connection with (i) the execution, delivery and performance by either Guarantor of this Servicing Agreement, or (ii) the validity and enforceability of this Servicing Agreement.

**9) Governing Law.** This Servicing Agreement shall be construed and enforced in accordance with the laws of the State of Georgia.

**10) Assignment.** Neither this Servicing Agreement nor any of the rights, interests or obligations under this Servicing Agreement may be assigned or delegated, in whole or in part, by operation of law or otherwise by either Guarantor without the prior consent of **MASHALA**, and any such attempted assignment without such prior consent shall be null and void. Subject to the preceding sentence, this Servicing Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the parties and their respective successors and permitted assigns.

**11) Entire Agreement.** This Servicing Agreement, together with the Assignment is the full and final agreement between the undersigned parties regarding the subject matter herein. Any prior agreements, oral or otherwise, are hereby merged into this final agreement. Each of the parties understands that they have had the right to have it reviewed by their own independent attorney prior to signing.

**12) Notices.** Whenever one party is required or permitted to give notice to the other party under this Servicing Agreement, such notice will be in writing unless otherwise specifically provided herein and will be deemed given when delivered by hand, one (1) day after being given to an express courier with a reliable system for tracking delivery, or five (5) days after the day of mailing, when mailed by United States mail or registered or certified mail, return receipt requested, postage prepaid.

Notifications will be addressed as follows:

**If to MASHALA:**
Mashala Investments, LLC
Angie Weiland
4571 Blackland Drive
Marietta, GA 30067

**If to either Guarantor:**
BinaNat Capital, LLC
Attention Robert Storm
2204 Sawgrass Village Drive
Ponte Vedra Beach, FL 32082

Either party hereto may from time to time change its address for notification purposes by giving the other prior written notice of the new address and the date upon which it will become effective.

**IN WITNESS HEREOF**, the parties have set their hands and seals to this Servicing Agreement, this 13th day of March, 2019.

**BinaNat Capital, LLC,**

By: *Robert Storm*
      Robert Storm, Manager

**Robert Storm**

By: *Robert Storm*
      Robert Storm, Individually

**Mashala Investments, LLC**

By: _____
      Angie Weiland, Manager

# EXHIBIT "B"

LAW OFFICES

# FLYNN & GOTTLIEB, P.A.

A PROFESSIONAL ASSOCIATION COMPRISED OF PROFESSIONAL CORPORATIONS

800 Johnson Ferry Road, N.E.

ATLANTA, GEORGIA 30342-1417

TELEPHONE (404) 497-8000
TELECOPIER (404) 845-0888

February 28, 2022

EDWARD D. FLYNN, III, P.C.*
JON A. GOTTLIEB, P.C.

* ALSO ADMITTED IN SC, FL AND
THE DISTRICT OF COLUMBIA

WRITER'S E-MAIL
jong@lawfg.com

WRITER'S DIRECT DIAL
(404) 497-8001

WRITER'S DIRECT FAX
(404) 497-8009

**VIA EMAIL (NJohns@mendenfreiman.com)**
Nathan T. Johns, Esq.
MENDEN FREIMAN
5565 Glenridge Connector, Ne
Suite 850
Atlanta, GA 30342

Re:     **Servicing Agreements between RDM Holdings II, LLC, Angie Weiland and Mashala Investments, LLC as Participant/Assignee and BinaNat Capital, LLC ("Debtor") secured by various properties and personally guaranteed by Robert Storm ("Guarantor")**

Dear Nathan:

I was out of town last Friday. As you know, I represent RDM Holdings II, LLC, Angie Weiland and Mashala Investments, LLC in connection with multiple Servicing Agreements with Debtor. Please direct all future communication regarding this matter to this office.

This is in response to your February 25, 2022 email and will generally follow its outline.

1. Debtor and Guarantor's refusal to secure the settlement amount with multiple properties is a deal breaker. It is indisputable that your client took monies received from my clients in connection with multiple properties and failed to repay. In other words, the outstanding amount owed to my clients is not limited to the Bouldercrest property. Demand is hereby made that Rob agree to secure $928,750 with the multiple properties owned by Debtor and Sindre LLC. As mentioned earlier, my clients will agree to a reasonable short sale arrangement, but they cannot be left in an insecure position. That was never the deal under which Rob induced the Servicing Agreements. If Debtor fails or is unable to secure the open balance, my clients will deem they have been defrauded and have no choice but to immediately pursue collection through litigation against Debtor and Guarantor.

2. Debtor and Guarantor are required to sign a new Note, which will have a maturity date and will be secured by the properties. This settlement will be properly documented and where applicable instruments will be recorded. Your client's refusal is a deal breaker.

3. As you know, under Georgia law every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement. <u>Ceasar v. Wells Fargo Bank,</u>

{00225256 1 }

Nathan T. Johns, Esq.
February 28, 2022
Page 2 of 3

N.A., 322 Ga. App. 529, 533, 744 S.E.2d 369, 374 (2013). The inference that Debtor will cease payments absent an agreement is tantamount to your client's bad faith and intent to improperly coerce a result that is contrary to the original Serving Agreements. Demand is hereby made for the punctual compliance with all Servicing Agreements, including without limitation the timely payments That are due thereunder in full. Be notified that if any payments are missed, litigation will immediately commence for breach of the Servicing Agreements by Debtor and Guarantor.

4.  Richard Maslia's agent must be involved in the marketing and selling efforts of the properties. Except where a closing fails due to the acts or omissions to Guarantor or his agent, my clients will protect Debtor and Guarantor against the claims of Richard's agent. Because Guarantor has a history of failing to keep my clients involved and informed, this is a deal breaker if your client refuses.

5.  I have a copy of the latest check stub from Debtor which indicates which Servicing Agreements are being paid. Debtor made installment payments on November 30, 2021, January 1, 2022 and February 1, 2022 to Richard and/or his children for, among other properties, Milner, Fraser and Altoona. In your email, you acknowledge that these 3 properties have already been paid off by the underlying borrower. Under the Servicing Agreements, the entire principal amount payable from Debtor to my clients is due when the underlying loan is paid in full by the borrower. It is obvious your client continued to make regular installment payments in order to hide the fact that the underlying loans were paid off. At best, Debtor's failure to repay my clients is a breach of agreement. At worst, it is fraud. Your email, as well as materials from Guarantor, prove our case. I urge your client to carefully consider the consequences of not cooperating. My clients are providing Rob with a reasonable path to an amicable resolution. However, if your client fails to agree or delays any longer in the resolution of this matter, my clients have already authorized and instructed me to commence litigation against Debtor and Guarantor, which will seek damages arising from your client's acts. Be notified that any fraud claim will seek punitive damages. Be further notified that any lawsuit shall also seek as part of its recovery all court costs and litigation expenses, including attorney's fees. You client may avoid the burden exposure and expense of litigation simply by agreeing to the reasonable terms proposed by my clients. Demand is herein made for your client's response non later than 4:00 PM on Friday, March 4, 2022.

Be governed accordingly.

Sincerely,

**FLYNN & GOTTLIEB, P.A.**

*Jon A. Gottlieb*

Jon A. Gottlieb

JAG:sc

{00225256 1 }

Nathan T. Johns, Esq.
February 28, 2022
Page 3 of 3

cc: Angie Weiland (*via email*)
    Richard Maslia (*via email*)

# EXHIBIT "C"

⊕ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
FULTON COUNTY, GEORGIA

**2022CV363021**

APR 05, 2022 02:06 PM

Cathelene Robinson, Clerk
Fulton County Superior Court

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

| | | |
|---|---|---|
| RDM Holdings II, LLC and | ) | |
| Mashala Investments, LLC, | ) | |
| | ) | |
| **Plaintiffs,** | ) | CIVIL ACTION FILE |
| | ) | NO. _____ |
| vs. | ) | |
| | ) | |
| BinaNat Capital, LLC, Robert | ) | |
| Storm, and Sindre, LLC, | ) | |
| | ) | |
| **Defendants.** | ) | |

### VERIFIED COMPLAINT

COME NOW, PLAINTIFFS RDM Holdings II, LLC and Mashala Investments, LLC in the above-styled action, and file this Complaint against BinaNat Capital, LLC, Robert Storm and Sindre, LLC, showing the Court as follows:

### JURISDICTION AND VENUE

1.

Defendant BinaNat Capital, LLC ("BinaNat") is a limited liability company existing under the laws of the State of Georgia, with its registered agent, MendenFreiman RA Services, Inc., upon whom service may be perfected upon Lawrence Freiman at 5565 Glenridge Connector, NE, Suite 850, Atlanta, Georgia 30342. BinaNat is, therefore, subject to the jurisdiction and venue of this Court.

2.

Defendant Robert Storm ("Storm") is a Florida resident who is subject to the jurisdiction and venue of this court under Georgia's long arm statute [O.C.G.A. § 9-10-91(1)] and may be served with process at either his place of business located at 2204 Sawgrass Village Drive, Ponte

Vedra Beach, Florida 32082 or his home located at 14370 Cottage Lake Road., Jacksonville, Florida 32224.

3.

Defendant Sindre, LLC ("Sindre") (Sindre, BinaNat and Storm are collectively "Defendants") is a limited liability company existing under the laws of the State of Georgia, with its registered agent, MendenFreiman RA Services, Inc., upon whom service may be perfected upon Lawrence Freiman at 5565 Glenridge Connector, NE, Suite 850, Atlanta, Georgia 30342. Sindre is, therefore, subject to the jurisdiction and venue of this Court.

## **BACKGROUND FACTS**

4.

BinaNat is owned and controlled by Storm.

5.

Storm is the Manager of BinaNat.

6.

Storm is authorized to bind BinaNat to agreements with third parties.

7.

BinaNat is in the business primarily of providing high interest rate loans secured by real property.

8.

Plaintiffs RDM Holdings II, LLC and Mashala Investments, LLC (individually "Plaintiff" and collectively "Plaintiffs") are Georgia limited liability companies who from time to time invest in transactions secured by real property.

{00226652 1 }

9.

Storm approached Plaintiffs about investing in secured loans offered by BinaNat to third parties. In exchange for said investments, BinaNat and Storm entered into Servicing Agreements (individually "Servicing Agreement" and collectively "Servicing Agreements") with each Plaintiff. A true and correct copy of a Servicing Agreement with RDM Holdings II, LLC ("RDM") is attached hereto as **Exhibit A**, and a true and correct copy of a Servicing Agreement with Mashala Investments, LLC ("Mashala") is attached hereto as **Exhibit B**.

10.

Each Servicing Agreement was executed by Storm, individually as a guarantor, and in his representative capacity as Manager for BinaNat.

11.

Storm's execution of each Servicing Agreement for BinaNat was duly authorized.

12.

Under each Servicing Agreement, the third party to whom BinaNat made a loan is referred to individually as an "Obligor" and collectively as "Obligors," and the loan that BinaNat made to an Obligor is referred to as the "Loan."

13.

As an inducement to enter the Servicing Agreements, Storm represented to each Plaintiff that each Servicing Agreement pertained to specific Loans that BinaNat made to Obligors and that each Loan would be secured by real property owned by the respective Obligor (the "Collateral").

14.

As an inducement to enter the Servicing Agreements, Storm represented to each Plaintiff that BinaNat would assign its security interest in the Collateral to the respective Plaintiff.

{00226652 1 }

15.

Under each Servicing Agreement, BinaNat agreed to service and administer Loans on behalf of the respective Plaintiff.

16.

Under each Servicing Agreement, BinaNat sold and assigned Loans to the respective Plaintiff in exchange for fees and compensation as set forth in each Servicing Agreement.

17.

Under each Servicing Agreement, BinaNat and Storm guaranteed the obligations of the Obligors on a full recourse basis in favor of the respective Plaintiff.

18.

Each Servicing Agreement provides that it shall be construed and enforced in accordance with the laws of the State of Georgia.

19.

Plaintiffs have recently learned that many of the Loans were paid-in-full and retired, without notice to Plaintiffs, and Defendants failed to repay the principal amount invested by the Plaintiff under the respective Servicing Agreement regarding such retired Loan.

20.

Upon information and belief at least 11 of the properties constituting Collateral were transferred without notice to Plaintiffs, and Defendants failed to repay the principal amount invested by the Plaintiffs under the respective Servicing Agreement regarding the Loan secured by such Collateral.

21.

Plaintiffs have recently learned that one of the properties constituting Collateral, referred

{00226652 1 }

- 4 -

to as Bouldercrest, was transferred without notice to Plaintiffs to Sindre, which is a Georgia limited liability company that is owned and controlled by Storm. A true and correct copy of the Limited Warranty Deed recorded in Deed Book 28900, page 423, DeKalb County Recoirds is attached hereto as **Exhibit D**.

22.

Mashala has recently learned that BinaNat never made a loan to Mario LaLand that was secured by one of the properties constituting Collateral, having the address of 1040 Edgewater Drive, Sandy Springs, GA 30328 (the "Edgewater Collateral"), despite the fact that Mashala provided funds to BinaNat for such loan under a Servicing Agreement.

23.

The Servicing Agreements with RDM are the same in all material respects except for the Loan, Collateral and date.

24.

The Servicing Agreements with Mashala are the same in all material respects except for the Loan, Collateral and date.

25.

Storm admits that the aggregate principal amount due and owing to RDM under the Servicing Agreements on the date hereof is $179,000.00, and the aggregate principal amount due and owing to Mashala under the Servicing Agreements on the date hereof is $704,250.00.

## COUNT ONE
## BREACH OF CONTRACT

26.

Plaintiffs hereby incorporate paragraphs 1-25 as if set forth herein verbatim.

27.

Defendants have breached the Servicing Agreements by failing to repay principal to Plaintiffs when the underlying Loan was paid-in-full and retired.

28.

Defendants have breached the Servicing Agreements by failing to repay principal to Plaintiffs when the Collateral securing the underlying Loan was transferred.

29.

Despite demand, Defendants have failed and refused to repay principal to the respective Plaintiff. A true and correct copy of the February 28, 2022 demand letter delivered to counsel for Defendants is attached hereto as **Exhibit C**.

30.

Plaintiffs have been damaged as the result of Defendants' breach of the Servicing Agreements.

31.

Defendants are liable to Plaintiff for the damages arising from such breach of the Servicing Agreements.

32.

The actions of Defendants described above constitute bad faith, and Defendants have been stubbornly litigious and have caused Plaintiffs unnecessary trouble and expense, therefore, entitling the Plaintiffs to their expenses of litigation, including without limitation, reasonable attorneys' fees.

{00226652 1 }

## <u>COUNT TWO</u>
## <u>CONVERSION</u>

33.

Plaintiffs hereby incorporate paragraphs 1-32 as if set forth herein verbatim.

34.

Defendants have exercised rights of ownership, misappropriated and otherwise converted to their own use, money belonging to Plaintiffs without authorization in a manner contrary to Plaintiffs' right of ownership of such money.

35.

At the time Defendants entered the Servicing Agreement covering the Edgewater Collateral, Defendants represented to Mashala that a loan in the amount of $572,000 would be made to Mario LaLand (the "Edgewater Loan") from the funds Mashala supplied under the specific Servicing Agreement, and such Edgewater Loan would be secured by the Edgewater Collateral.

36.

The act of soliciting and retaining such funds from Mashala without making the Edgewater Loan constitutes conversion for which Defendants are liable.

37.

The act of retaining funds from retired Loans or received from the transfer of Collateral instead of repaying such money to Plaintiffs constitutes conversion for which Defendants are liable.

38.

Defendants Plaintiffs have been damaged as the result of Defendants' conversion of monies that belong to Plaintiffs.

{00226652 1 }

39.

Defendants are liable to Plaintiff for the damages arising from such conversion.

40.

The actions of Defendants described above constitute bad faith, and Defendants have been stubbornly litigious and have caused Plaintiffs unnecessary trouble and expense, therefore, entitling the Plaintiffs to their expenses of litigation, including without limitation, reasonable attorneys' fees.

41.

The actions of Defendants show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences such that the Plaintiffs are entitled to punitive damages to punish, penalize and deter Defendants from committing these acts in the future.

42.

Alternatively, the peace, happiness, or feelings of the Plaintiffs have been damaged to the extent prescribed by the enlightened consciences of impartial jurors.

**COUNT THREE**
**FRAUD**

43.

Plaintiffs hereby incorporate paragraphs 1-39 as if set forth herein verbatim.

44.

Defendants failed to inform Mashala of the fact that the Edgewater Loan never occurred and Defendants instead retained funds solicited from Plaintiffs for such purpose.

45.

Defendants failed to inform Mashala of the fact that the Edgewater Loan never occurred in

order to conceal such fact.

46.

Defendants failed to inform Plaintiffs the fact that underlying Loans, other than the Edgewater Loan which was never made, were paid-in-full and retired in order to conceal such fact.

47.

Defendants concealed from Mashala the fact that the Edgewater Loan was never made in order retain such repaid funds instead of repaying the amount due and owing to Mashala.

48.

Defendants concealed from Plaintiffs the fact that underlying Loans, other than the Edgewater Loan, were paid-in-full and retired in order retain such repaid funds instead of repaying the amount due and owing to the respective Plaintiff.

49.

Defendants failed to inform Plaintiffs of the fact that most of the Collateral securing underlying Loans were either transferred or where never pledged as collateral to BinaNat in order to conceal such fact to wit:

- 1435 Copeland Avenue, Atlanta, GA

- 1040 Edgewater, Sandy Springs, GA

- 1425 Westview Rd., Atlanta, GA

- 283 Old Milner

- Fairburn

- 1232 Lucile Ave, , Atlanta, GA

- Glendale

- Fraser

{00226652 1 }

- Silverleaf

- 1168-1186 Ira St., Atlanta, GA

- 3115 Gilbert St., Savannah, GA

- 7832 Stephenson Dr., Jacksonville, FL

- 2281 Pryor Rd., Atlanta, GA

- 412 Ashwood Ave., Atlanta, GA

50.

Defendants concealed from Plaintiffs the fact that most of the Collateral securing underlying Loans were transferred in order to avoid repayment of the amount due and owing to the respective Plaintiff.

51.

Defendants failed to inform Plaintiffs of unmade Loans, said repaid Loans and transferred Collateral in order to mislead Plaintiffs into believing that all Loans were made and were secured by the Collateral, no Loans had been repaid, and that no Collateral had been transferred.

52.

Defendants' concealment was intentional to mislead Plaintiffs in order to avoid repayment of the amounts due and owing to Plaintiffs.

53.

Defendants' concealment was intentional to induce Plaintiffs not to seek the recovery of amounts due and owing to them from Defendants.

54.

At all times relevant hereto, Defendants knew their concealment would mislead Plaintiffs into believing that no Loans had been repaid and that no Collateral had been transferred.

{00226652 1 }

55.

Defendants' concealment constitutes fraud because they knew that, by concealing the fact that Loans had either not ever been made, or had been repaid, and that Collateral had been transferred, Plaintiffs would not know of their right to seek the recovery of the amounts due and owing to them.

56.

Defendants furthered their concealment by continuing to pay regular installments of interest that was due and owing under each Servicing Agreement.

57.

Defendants intentionally continued to pay regular installments of interest that was due and owing under each Servicing Agreement in order to mislead Plaintiffs into incorrectly believing that all Loans had been made and were secured by the Collateral, no Loans had been repaid and that no Collateral had been transferred.

58.

Such concealment and affirmative acts to hide the truth constitutes fraud.

59.

Defendants are liable to Plaintiffs for such fraud.

60.

Plaintiffs have been damaged by Defendants' fraud for which Defendants are liable.

61.

The actions of Defendants described above constitute bad faith, and Defendants have been stubbornly litigious and have caused Plaintiffs unnecessary trouble and expense, therefore, entitling the Plaintiffs to their expenses of litigation, including without limitation, reasonable

{00226652 1 }

attorneys' fees.

62.

The actions of Defendants show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences such that the Plaintiffs are entitled to punitive damages to punish, penalize and deter Defendants from committing these acts in the future.

63.

Alternatively, the peace, happiness, or feelings of the Plaintiffs have been damaged to the extent prescribed by the enlightened consciences of impartial jurors.

## COUNT FOUR
## ACCOUNTING

64.

Plaintiffs hereby incorporate paragraphs 1-63 as if set forth herein verbatim.

65.

Plaintiffs are entitled to an accounting from Defendants for all monies and cash retained by Defendants in violation of their obligation to repay same to Plaintiffs under the Servicing Agreements.

66.

Plaintiffs are entitled to an accounting from Defendants to trace and determine the whereabouts and disposition of the amounts due and owing to Plaintiffs under the Servicing Agreements through the services of a forensic accountant.

67.

Plaintiffs have no adequate remedy at law because without such accounting Plaintiffs will not have an adequate means to trace and recover monies and cash for which Defendants are liable.

{00226652 1 }

68.

The Court is authorized as a court of equity to issue an order instanter compelling such accounting.

69.

The balance of the conveniences of the parties and the consideration of whether great harm would result if the Court denies injunctive relief, shows the Plaintiffs are entitled to such accounting.

## COUNT FIVE
## INJUNCTIVE AND OTHER EQUITABLE RELIEF

70.

Plaintiffs hereby incorporate paragraphs 1-69 as if set forth herein verbatim.

71.

The record reflects the Edgewater Loan was never made.

72.

The record reflects the Edgewater Collateral never secured the Edgewater Loan.

73.

Excluding the Edgewater Loan, the Loans have been paid-in-full and retired without corresponding payment to the respective Plaintiff of the amount due and owing in connection with said Loans.

74.

Excluding the Edgewater Collateral, most or all of the Collateral have been transferred without corresponding payment to the respective Plaintiff of the amount due and owing in connection with said Loans.

{00226652 1 }

75.

If Defendants are allowed to retain the monies and cash received from Mashala from the Edgewater Loan, Mashala will be irreparably harmed.

76.

If Defendants are allowed to retain the monies and cash received from the paid-in-full and retired Loans and/or the transfer of Collateral, Plaintiffs will be irreparably harmed.

77.

The Court is authorized as a court of equity to issue an order instanter compelling Defendants to set aside and impose a constructive trust for the benefit of Plaintiffs for such amounts of monies and cash received from the paid-in-full and retired Loans and/or the transfer of Collateral.

78.

The Court is authorized as a court of equity to issue an order instanter compelling Defendants to set aside and impose a constructive trust for the benefit of Plaintiffs for such amounts of monies and cash received from Mashala for the Edgewater Loan.

79.

The balance of the conveniences of the parties and the consideration of whether great harm would result if the Court denies injunctive relief, shows the Plaintiffs are entitled to injunctive relief.

## COUNT SIX
## APPOINTMENT OF RECEIVER

80.

Plaintiffs hereby incorporate paragraphs 1-78 as if set forth herein verbatim.

81.

The business of BinaNat has been improperly and inefficiently managed, the danger and destruction and loss of BinaNat's assets is imminent, the rights of Plaintiffs cannot be fully protected, and therefore the Court should appoint a receiver of BinaNat pursuant to O.C.G.A. § 9-8-1 et seq. to marshal BinaNat's assets and manage BinaNat's affairs.

WHEREFORE, Plaintiffs pray for the following relief:

(a)  that summons issue and that Defendants be served as provided by law;

(b)  that the Court grant a jury trial on all issues so triable;

(c)  that the Plaintiffs have and recover judgment against Defendants BinaNat and Storm under Counts One, Two and Three hereof seeking monetary damages, with interest accruing thereon at the maximum rate allowed by law;

(d)  that the Plaintiffs have and recover judgment against Defendants BinaNat and Storm under Counts One, Two and Three hereof seeking attorney's fees;

(e)  that the Plaintiffs have and recover judgment against Defendants BinaNat and Storm under Counts Two and Three hereof seeking punitive damages in an amount to be determined at the trial of this action;

(f)  that the Court issue an order for the relief prayed under Counts Four, Five and Six;

(g)  that the Court issue an order for the relief prayed under Count Five enjoining Sindre from financing or transferring any property constituting Collateral;

(h)  that the Court enjoin Defendants from transferring or using any cash or monies retained from repaid Loans or obtained from the transfer of Collateral for their use, including without limitation the payment of their legal and professional expenses arising from the defense of this action; and

{00226652 1 }

(i)  for such other relief deemed appropriate and proper in the discretion of this Court.

**FLYNN & GOTTLIEB, P.A.**

*/s/ Jon A. Gottlieb*
Jon A. Gottlieb, Esquire
Georgia Bar No. 303060
Attorneys for Plaintiffs RDM Holdings II, LLC and
Mashala Investments, LLC

800 Johnson Ferry Road, N.E.
Atlanta, Georgia 30342-1417
(404) 497-8000 Telephone
(404) 497-8009 FAX
jong@lawfg.com

## IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| **RDM Holdings II, LLC and** | ) | |
| **Mashala Investments, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION FILE** |
| | ) | **NO. _____** |
| **vs.** | ) | |
| | ) | |
| **BinaNat Capital, LLC and Robert** | ) | |
| **Storm,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>VERIFICATION</u>

STATE OF GEORGIA

COUNTY OF FULTON

PERSONALLY APPEARED before me, an officer duly authorized by law to administer

oaths, Richard D. Maslia, who after first being duly sworn, states that he is the Manager of RDM

Holdings II, LLC, which is named as a Plaintiff in the within and foregoing Verified Complaint,

that he has read the said Verified Complaint, and that the facts contained in the within and

foregoing Verified Complaint are true and correct.

Sworn to and subscribed before me
this _____ day of March, 2022.

_____        _____
Notary Public                                              Richard D. Maslia

(NOTARY SEAL)

{00226652 1 }

**IN THE SUPERIOR COURT OF FULTON COUNTY**

**STATE OF GEORGIA**

| | | |
|---|---|---|
| **RDM Holdings II, LLC and** | ) | |
| **Mashala Investments, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION FILE** |
| | ) | **NO. _____** |
| **vs.** | ) | |
| | ) | |
| **BinaNat Capital, LLC and Robert** | ) | |
| **Storm,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**VERIFICATION**</u>

STATE OF GEORGIA

COUNTY OF FULTON

      PERSONALLY APPEARED before me, an officer duly authorized by law to administer oaths, Angela Weiland, who after first being duly sworn, states that she is the Manager of Mashala Investments, LLC, which is named as a Plaintiff in the within and foregoing Verified Complaint, that she has read the said Verified Complaint, and that the facts contained in the within and foregoing Verified Complaint are true and correct.

Sworn to and subscribed before me
this 31st day of March, 2022.

_____
Notary Public

(NOTARY SEAL)

_____
Angela Weiland

{00226652 1 }

**EXHIBIT A**



## SERVICING AGREEMENT

**Loan dated: 2/16/2018**
**Borrower: Taylor Built Homes, LLC**
**Guarantor: John Taylor, Individually**
**Security: 891 Bouldercrest Dr. SE, Atlanta, GA 30316**
**Total Loan Amount: $375,000.00**

**WHEREAS, BinaNat Capital, LLC** ("**BinaNat**") and **RDM Holdings II, LLC,** ("**Participant**") entered into a Transfer and Assignment dated as of **February 16th, 2018** (the "Assignment"), pursuant to which **BinaNat** sold to **Participant** all beneficial right, title and interest in and to **73.33% ($275,000.00)** of the loan described above (the "Loan").

**WHEREAS, Participant** has agreed to retain **BinaNat** as the servicer for the Loan and **BinaNat** has agreed to service the Loan all on the terms and conditions set forth herein; and

**WHEREAS,** each of **BinaNat** and its Member, **Robert Storm**, has agreed to guaranty to **Participant** the performance of all obligations of any and all obligors and/or guarantors under the Loan (each, an "Obligor" and, collectively, "Obligors").

**NOW THEREFORE,** in consideration of the mutual promises contained herein and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**1) Term.** This term of this Servicing Agreement shall commence as of the date of the Assignment and will terminate on the **date the Loan (including all principal and accrued interest) is paid to Participant in full** (the "Termination Date") unless terminated sooner by both parties upon mutual written agreement.

**2) Servicing Activities.**

   a. **BinaNat** shall service and administer the Loan and manage, dispose of and otherwise deal with any collateral securing the Loan, in each case for the direct benefit of **Participant**. **BinaNat** shall have the full power and authority to cause to be done any and all things for the benefit of Participant in connection with the servicing and administration of the Loan that BinaNat may reasonably deem necessary or desirable, including without limitation foreclosing on the security for the Loan noted above (the "Security). The Loan is secured by a first priority deed to secure debt encumbering the Security and recorded in the records of the superior court in which such Security is located. **BinaNat** shall hold the escrow funds noted above in trust for repairs and renovations to the Security and shall disburse said escrow funds pursuant to the terms of the Loan.

   b. **BinaNat** shall on behalf of **Participant** diligently collect all payment due by the Obligor(s) under the Loan as they become due, including but not limited to (i) principal, (ii) interest, (iii) advances for hazard insurance premiums, payments with regard to prior liens, taxes, legal fees, foreclosure costs, and other miscellaneous advances, (iv) late charges, and (v) NSF charges. **BinaNat** shall remit to **Participant** all collections net of fees and advances due to BinaNat under this Servicing Agreement. If such remittance is not received by **Participant** on or before the **10th** day of each month in which such payments are due and payable under the Loan, **BinaNat** shall be assessed a late fee of ten percent (10%) of the amount due.

c. **BinaNat** shall pay to **Participant** in connection with the Loan closing and Assignment a funding fee of $5,500.00.

3) **Compensation**. During the term of this Servicing Agreement, **BinaNat** shall be entitled to retain as compensation for its servicing of the Loan an amount equal to two percent (2%) of the Loan payments remitted to **BinaNat** in addition to any other fees paid to **BinaNat** as noted on the Loan closing statement.

4) **Default**. **BinaNat** shall be responsible for making all payments due to **Participant** under or in connection with the Loan (net of fees and advances due to **BinaNat**) regardless of collection from the Obligors. If **BinaNat** fails to remit any monthly payment (and late fee, if any) to **Participant** within ten (10) days of the due date as stated in the Loan, then **Participant** may, upon written notice to **BinaNat**, collect such payment and/or any future payments directly from the Loan obligor, and/or terminate the provisions of Section 1-3 above, in any case without limiting any rights available to **Participant** under Section 5 below or otherwise arising under this Servicing Agreement.

5) **Guaranty**.   Each of **BinaNat**, a Georgia Limited Liability company and **Robert Storm**, an individual resident of the state of Florida (each, a "Guarantor" and, collectively, "Guarantors") absolutely, irrevocably and unconditionally guarantees to **Participant** the due, full and punctual performance of all of obligations of the Obligors under and in connection with the Loan (including but not limited to any obligation for the payment of money) (the "Guaranteed Obligations"). Notwithstanding the foregoing, **Participant** may demand payment and/or performance of the Guaranteed Obligations, pursue any right or remedy it may have under or in connection with the Loan, or commence any suit or other proceeding, simultaneously against Guarantors and any Obligor. Guarantors shall remain bound by this guaranty, without notice to or further assent by **BinaNat**, notwithstanding any (i) agreement between any Obligor and **Participant** that, from time to time, amends, extends, supplements or otherwise modifies the Loan, or (ii) agreement or assent by **Participant** to delay or extend the date on which any payment must be made, or performance of any other obligation must be completed, by any Obligor pursuant to the Loan. Guarantor expressly waives (i) protest, and (ii) notice of acceptance of this guaranty by Company, and (iii) demand for payment or performance of any of the Guaranteed Obligations. Guarantors waive any right that either of them might have to challenge the amount or validity of any amounts acknowledged by any Obligor to be due under the Loan or determined to be due under the Loan pursuant to any dispute resolution procedures set forth therein; provided that Guarantors reserve all rights and other defenses otherwise available to the Obligors with respect to the Guaranteed Obligations except defenses arising from the bankruptcy, insolvency, dissolution or liquidation of any Obligor, which defenses are waived by Guarantors, and any other defenses expressly waived in this guaranty. Guarantors agree that **Participant** may enforce this guaranty without the necessity at any time of resorting to or exhausting any other remedy, security or collateral. This guaranty is a continuing guaranty of performance and payment and not merely of collection. Accordingly, **Participant** shall not be obligated or required before enforcing this guaranty against Guarantors: (i) to pursue any right or remedy **Participant** may have against any Obligor, or any other person or commence any suit or other proceeding against any Obligor or any other person in any court or other tribunal; or (ii) to make any claim in a liquidation or bankruptcy of any Obligor or any other person. The guaranty of performance of the Guaranteed Obligations hereunder is a continuing guaranty of Guarantors. Accordingly, this guaranty shall remain in full force and effect until such time as all the Guaranteed Obligations have been discharged in full.

6) **Limitation of Liability**.   The Assignment of the Loan is made on a full recourse basis, and the Guarantors shall be personally liable to **Participant** for an amount up to the full amount of all principal and accrued interest under the Loan, plus any costs and expenses (including court costs and attorneys' fees) incurred by Participant in collecting any amounts due under this servicing Agreement or the Loan (the "Liability Cap"). Notwithstanding anything else set forth herein, Guarantors' liability for any and all claims arising under this Servicing Agreement under any legal theory shall not exceed the Liability Cap.

7) **Reasonable Access. BinaNat** shall give **Participant** and its authorized representatives reasonable access to all documents, files, books, records and accounts, related to the Loan, and permit Participant to make such inspections thereof as Participant may reasonably request during normal business hours, *provided, however,* that such investigation or inspection shall be at **Participant'** expense and conducted in such a manner as to not interfere unreasonably with **BinaNat's** business operations.

8) **Representations and Warranties.** Each Guarantor represents, warrants and covenants as follows:

a. **BinaNat** (i) is duly organized, validly existing and in good standing under the laws of its jurisdiction, (ii) is duly qualified and in good standing in every applicable jurisdiction in which it would be qualified in order to perform any of its obligations under this Servicing Agreement, (iii) has the corporate power to own its property and the authority to carry on the business as conducted as of the date hereof, and (iv) has the corporate power to enter into this Servicing Agreement.

b. The execution, delivery and performance of this Servicing Agreement have been duly authorized by each Guarantor and each constitutes a valid and binding obligation of each Guarantor, enforceable against each Guarantor in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, fraudulent conveyance, fraudulent transfer, reorganization, moratorium, or other similar laws from time to time in effect affecting the enforcement of creditors' rights generally.

c. The execution, delivery and performance of this Servicing Agreement will not conflict with or result in a breach of any of the terms, conditions or provisions of, give rise to a right of termination under, constitute a default under, or result in any violation of, the organizational documents of either Guarantor or any mortgage, agreement, contract, instrument, order, judgment, decree, statute, law, rule or regulation to which the either Guarantor any of its respective properties is subject as of the date hereof.

d. The obligations of each Guarantor under this Servicing Agreement are direct and unconditional obligations of each Guarantor and shall rank *pari passu*, without any preference among themselves, and at least equally and ratably in all respects with all its other present and future unsecured and unsubordinated indebtedness.

e. No authorizations or other consents, approvals or notices of or to any person or entity are required in connection with (i) the execution, delivery and performance by either Guarantor of this Servicing Agreement, or (ii) the validity and enforceability of this Servicing Agreement.

9) **Governing Law.** This Servicing Agreement shall be construed and enforced in accordance with the laws of the State of Georgia.

10) **Assignment.** Neither this Servicing Agreement nor any of the rights, interests or obligations under this Servicing Agreement may be assigned or delegated, in whole or in part, by operation of law or otherwise by either Guarantor without the prior consent of **Participant**, and any such attempted assignment without such prior consent shall be null and void. Subject to the preceding sentence, this Servicing Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the parties and their respective successors and permitted assigns.

11) **Entire Agreement.** This Servicing Agreement, together with the Assignment is the full and final agreement between the undersigned parties regarding the subject matter herein. Any prior agreements, oral or otherwise, are hereby merged into this final agreement. Each of the parties understands that they have had the right to have it reviewed by their own independent attorney prior to signing.

12) **Notices.** Whenever one party is required or permitted to give notice to the other party under this Servicing Agreement, such notice will be in writing unless otherwise specifically provided herein and will be deemed given when delivered by hand, one (1) day after being given to an express courier with a reliable system for tracking delivery, or five (5) days after the day of mailing, when mailed by United States mail or registered or certified mail, return receipt requested, postage prepaid.

Notifications will be addressed as follows:

**If to Participant:**
Richard Maslia
RDM Holdings II, LLC
3115 Piedmont Road
Suite F-201
Atlanta, GA 30305

**If to either Guarantor:**
BinaNat Capital, LLC
Attention Robert Storm
2204 Sawgrass Village Drive
Ponte Vedra Beach, FL 32082

Either party hereto may from time to time change its address for notification purposes by giving the other prior written notice of the new address and the date upon which it will become effective.

**IN WITNESS HEREOF,** the parties have set their hands and seals to this Servicing Agreement, this 16th day of February, 2018.


**BinaNat Capital, LLC,**

By: _____
      Robert Storm, Manager



**Robert Storm**

By: _____
      Robert Storm, Individually



**RDM Holdings II, LLC**

By: _____
      Richard Maslia, Manager

**EXHIBIT B**



**BINANAT CAPITAL**

SERVICING AGREEMENT

**Loan dated: 3/13/2019**
**Borrower: Mario LaLand**
**Guarantor: Mario LaLand**
**Security: 1040 Edgewater Drive, Sandy Springs, GA 30328**
**Total Loan Amount: $572,000.00**

**WHEREAS,** BinaNat Capital, LLC ("**BinaNat**") and Mashala Investments, LLC, ("**MASHALA**") entered into a Transfer and Assignment dated as of Marh 13ᵗʰ, 2019 (the "Assignment"), pursuant to which **BinaNat** sold to **MASHALA** all beneficial right, title and interest in and to **13.11%** **($75,000.00)** of the loan described above (the "Loan").

**WHEREAS,** MASHALA has agreed to retain **BinaNat** as the servicer for the Loan and **BinaNat** has agreed to service the Loan all on the terms and conditions set forth herein; and

**WHEREAS,** each of BinaNat and its Member, **Robert Storm**, has agreed to guaranty to **MASHALA** the performance of all obligations of any and all obligors and/or guarantors under the Loan (each, an "Obligor" and, collectively, "Obligors").

**NOW THEREFORE,** in consideration of the mutual promises contained herein and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1) **Term.** This term of this Servicing Agreement shall commence as of the date of the Assignment and will terminate on the **date the Loan (including all principal and accrued interest) is paid to MASHALA in full** (the "Termination Date") unless terminated sooner by both parties upon mutual written agreement.

2) **Servicing Activities.**

   a. **BinaNat** shall service and administer the Loan and manage, dispose of and otherwise deal with any collateral securing the Loan, in each case for the direct benefit of **MASHALA**. **BinaNat** shall have the full power and authority to cause to be done any and all things for the benefit of MASHALA in connection with the servicing and administration of the Loan that BinaNat may reasonably deem necessary or desirable, including without limitation foreclosing on the security for the Loan noted above (the "Security). The Loan is secured by a first priority deed to secure debt encumbering the Security and recorded in the records of the superior court in which such Security is located. BinaNat shall hold the escrow funds noted above in trust for repairs and renovations to the Security and shall disburse said escrow funds pursuant to the terms of the Loan.

   b. **BinaNat** shall on behalf of **MASHALA** diligently collect all payment due by the Obligor(s) under the Loan as they become due, including but not limited to (i) principal, (ii) interest, (iii) advances for hazard insurance premiums, payments with regard to prior liens, taxes, legal fees, foreclosure costs, and other miscellaneous advances, (iv) late charges, and (v) NSF charges. **BinaNat** shall remit to **MASHALA** all collections net of fees and advances due to BinaNat under this Servicing Agreement. If such remittance is not received by **MASHALA** on or before the **10ᵗʰ** day of each month in which such payments are due and payable under the Loan, **BinaNat** shall be assessed a late fee of ten percent (10%) of the amount due.

*c. BinaNat shall pay to MASHALA in connection with the Loan closing and Assignment a funding fee of $1,500.00.*

**3) Compensation.** During the term of this Servicing Agreement, **BinaNat** shall be entitled to retain as compensation for its servicing of the Loan an amount equal to two percent (2%) of the Loan payments remitted to **BinaNat** in addition to any other fees paid to **BinaNat** as noted on the Loan closing statement.

**4) Default. BinaNat** shall be responsible for making all payments due to **MASHALA** under or in connection with the Loan (net of fees and advances due to **BinaNat**) regardless of collection from the Obligors. If **BinaNat** fails to remit any monthly payment (and late fee, if any) to **MASHALA** within ten (10) days of the due date as stated in the Loan, then **MASHALA** may, upon written notice to **BinaNat**, collect such payment and/or any future payments directly from the Loan obligor, and/or terminate the provisions of Section 1-3 above, in any case without limiting any rights available to **MASHALA** under Section 5 below or otherwise arising under this Servicing Agreement.

**5) Guaranty.** Each of **BinaNat**, a Georgia Limited Liability company and **Robert Storm**, an individual resident of the state of Florida (each, a "Guarantor" and, collectively, "Guarantors") absolutely, irrevocably and unconditionally guarantees to **MASHALA** the due, full and punctual performance of all of obligations of the Obligors under and in connection with the Loan (including but not limited to any obligation for the payment of money) (the "Guaranteed Obligations"). Notwithstanding the foregoing, **MASHALA** may demand payment and/or performance of the Guaranteed Obligations, pursue any right or remedy it may have under or in connection with the Loan, or commence any suit or other proceeding, simultaneously against Guarantors and any Obligor. Guarantors shall remain bound by this guaranty, without notice to or further assent by **BinaNat**, notwithstanding any (i) agreement between any Obligor and **MASHALA** that, from time to time, amends, extends, supplements or otherwise modifies the Loan, or (ii) agreement or assent by **MASHALA** to delay or extend the date on which any payment must be made, or performance of any other obligation must be completed, by any Obligor pursuant to the Loan. Guarantor expressly waives (i) protest, and (ii) notice of acceptance of this guaranty by Company, and (iii) demand for payment or performance of any of the Guaranteed Obligations. Guarantors waive any right that either of them might have to challenge the amount or validity of any amounts acknowledged by any Obligor to be due under the Loan or determined to be due under the Loan pursuant to any dispute resolution procedures set forth therein; provided that Guarantors reserve all rights and other defenses otherwise available to the Obligors with respect to the Guaranteed Obligations except defenses arising from the bankruptcy, insolvency, dissolution or liquidation of any Obligor, which defenses are waived by Guarantors, and any other defenses expressly waived in this guaranty. Guarantors agree that **MASHALA** may enforce this guaranty without the necessity at any time of resorting to or exhausting any other remedy, security or collateral. This guaranty is a continuing guaranty of performance and payment and not merely of collection. Accordingly, **MASHALA** shall not be obligated or required before enforcing this guaranty against Guarantors: (i) to pursue any right or remedy **MASHALA** may have against any Obligor, or any other person or commence any suit or other proceeding against any Obligor or any other person in any court or other tribunal; or (ii) to make any claim in a liquidation or bankruptcy of any Obligor or any other person. The guaranty of performance of the Guaranteed Obligations hereunder is a continuing guaranty of Guarantors. Accordingly, this guaranty shall remain in full force and effect until such time as all the Guaranteed Obligations have been discharged in full.

**6) Limitation of Liability.** The Assignment of the Loan is made on a full recourse basis, and the Guarantors shall be personally liable to **MASHALA** for an amount up to the full amount of all principal and accrued interest under the Loan, plus any costs and expenses (including court costs and attorneys' fees) incurred by MASHALA in collecting any amounts due under this servicing Agreement or the Loan (the "Liability Cap"). Notwithstanding anything else set forth herein, Guarantors' liability for any and all claims arising under this Servicing Agreement under any legal theory shall not exceed the Liability Cap.

**7) Reasonable Access. BinaNat** shall give **MASHALA** and its authorized representatives reasonable access to all documents, files, books, records and accounts, related to the Loan, and permit MASHALA to make such inspections thereof as MASHALA may reasonably request during normal business hours, *provided, however*, that such investigation or inspection shall be at **MASHALA'** expense and conducted in such a manner as to not interfere unreasonably with **BinaNat's** business operations.

**8) Representations and Warranties.** Each Guarantor represents, warrants and covenants as follows:

a. **BinaNat** (i) is duly organized, validly existing and in good standing under the laws of its jurisdiction, (ii) is duly qualified and in good standing in every applicable jurisdiction in which it would be qualified in order to perform any of its obligations under this Servicing Agreement, (iii) has the corporate power to own its property and the authority to carry on the business as conducted as of the date hereof, and (iv) has the corporate power to enter into this Servicing Agreement.

b. The execution, delivery and performance of this Servicing Agreement have been duly authorized by each Guarantor and each constitutes a valid and binding obligation of each Guarantor, enforceable against each Guarantor in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, fraudulent conveyance, fraudulent transfer, reorganization, moratorium, or other similar laws from time to time in effect affecting the enforcement of creditors' rights generally.

c. The execution, delivery and performance of this Servicing Agreement will not conflict with or result in a breach of any of the terms, conditions or provisions of, give rise to a right of termination under, constitute a default under, or result in any violation of, the organizational documents of either Guarantor or any mortgage, agreement, contract, instrument, order, judgment, decree, statute, law, rule or regulation to which the either Guarantor any of its respective properties is subject as of the date hereof.

d. The obligations of each Guarantor under this Servicing Agreement are direct and unconditional obligations of each Guarantor and shall rank *pari passu*, without any preference among themselves, and at least equally and ratably in all respects with all its other present and future unsecured and unsubordinated indebtedness.

e. No authorizations or other consents, approvals or notices of or to any person or entity are required in connection with (i) the execution, delivery and performance by either Guarantor of this Servicing Agreement, or (ii) the validity and enforceability of this Servicing Agreement.

**9) Governing Law.** This Servicing Agreement shall be construed and enforced in accordance with the laws of the State of Georgia.

**10) Assignment.** Neither this Servicing Agreement nor any of the rights, interests or obligations under this Servicing Agreement may be assigned or delegated, in whole or in part, by operation of law or otherwise by either Guarantor without the prior consent of **MASHALA**, and any such attempted assignment without such prior consent shall be null and void. Subject to the preceding sentence, this Servicing Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the parties and their respective successors and permitted assigns.

**11) Entire Agreement.** This Servicing Agreement, together with the Assignment is the full and final agreement between the undersigned parties regarding the subject matter herein. Any prior agreements, oral or otherwise, are hereby merged into this final agreement. Each of the parties understands that they have had the right to have it reviewed by their own independent attorney prior to signing.

**12) Notices.** Whenever one party is required or permitted to give notice to the other party under this Servicing Agreement, such notice will be in writing unless otherwise specifically provided herein and will be deemed given when delivered by hand, one (1) day after being given to an express courier with a reliable system for tracking delivery, or five (5) days after the day of mailing, when mailed by United States mail or registered or certified mail, return receipt requested, postage prepaid.

Notifications will be addressed as follows:

**If to MASHALA:**
Mashala Investments, LLC
Angie Weiland
4571 Blackland Drive
Marietta, GA 30067

**If to either Guarantor:**
BinaNat Capital, LLC
Attention Robert Storm
2204 Sawgrass Village Drive
Ponte Vedra Beach, FL 32082

Either party hereto may from time to time change its address for notification purposes by giving the other prior written notice of the new address and the date upon which it will become effective.

**IN WITNESS HEREOF,** the parties have set their hands and seals to this Servicing Agreement, this 13th day of March, 2019.

**BinaNat Capital, LLC,**

By: *Robert Storm*
       Robert Storm, Manager

**Robert Storm**

By: *Robert Storm*
       Robert Storm, Individually

**Mashala Investments, LLC**

By: _____
       Angie Weiland, Manager

**EXHIBIT C**

LAW OFFICES

# FLYNN & GOTTLIEB, P.A.

A PROFESSIONAL ASSOCIATION COMPRISED OF PROFESSIONAL CORPORATIONS

800 Johnson Ferry Road, N.E.

ATLANTA, GEORGIA 30342-1417

TELEPHONE (404) 497-8000
TELECOPIER (404) 845-0888

February 28, 2022

EDWARD D. FLYNN, III, P.C.*
JON A. GOTTLIEB, P.C.

——————————
* ALSO ADMITTED IN SC, FL AND
THE DISTRICT OF COLUMBIA

WRITER'S E-MAIL
jong@lawfg.com

WRITER'S DIRECT DIAL
(404) 497-8001

WRITER'S DIRECT FAX
(404) 497-8009

**VIA EMAIL (NJohns@mendenfreiman.com)**
Nathan T. Johns, Esq.
MENDEN FREIMAN
5565 Glenridge Connector, Ne
Suite 850
Atlanta, GA 30342

> Re:  **Servicing Agreements between RDM Holdings II, LLC, Angie Weiland and Mashala Investments, LLC as Participant/Assignee and BinaNat Capital, LLC ("Debtor") secured by various properties and personally guaranteed by Robert Storm ("Guarantor")**

Dear Nathan:

I was out of town last Friday. As you know, I represent RDM Holdings II, LLC, Angie Weiland and Mashala Investments, LLC in connection with multiple Servicing Agreements with Debtor. Please direct all future communication regarding this matter to this office.

This is in response to your February 25, 2022 email and will generally follow its outline.

1. Debtor and Guarantor's refusal to secure the settlement amount with multiple properties is a deal breaker. It is indisputable that your client took monies received from my clients in connection with multiple properties and failed to repay. In other words, the outstanding amount owed to my clients is not limited to the Bouldercrest property. Demand is hereby made that Rob agree to secure $928,750 with the multiple properties owned by Debtor and Sindre LLC. As mentioned earlier, my clients will agree to a reasonable short sale arrangement, but they cannot be left in an insecure position. That was never the deal under which Rob induced the Servicing Agreements. If Debtor fails or is unable to secure the open balance, my clients will deem they have been defrauded and have no choice but to immediately pursue collection through litigation against Debtor and Guarantor.

2. Debtor and Guarantor are required to sign a new Note, which will have a maturity date and will be secured by the properties. This settlement will be properly documented and where applicable instruments will be recorded. Your client's refusal is a deal breaker.

3. As you know, under Georgia law every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement. Ceasar v. Wells Fargo Bank,

Nathan T. Johns, Esq.
February 28, 2022
Page 2 of 3

N.A., 322 Ga. App. 529, 533, 744 S.E.2d 369, 374 (2013). The inference that Debtor will cease payments absent an agreement is tantamount to your client's bad faith and intent to improperly coerce a result that is contrary to the original Serving Agreements. Demand is hereby made for the punctual compliance with all Servicing Agreements, including without limitation the timely payments That are due thereunder in full. Be notified that if any payments are missed, litigation will immediately commence for breach of the Servicing Agreements by Debtor and Guarantor.

4.  Richard Maslia's agent must be involved in the marketing and selling efforts of the properties. Except where a closing fails due to the acts or omissions to Guarantor or his agent, my clients will protect Debtor and Guarantor against the claims of Richard's agent. Because Guarantor has a history of failing to keep my clients involved and informed, this is a deal breaker if your client refuses.

5.  I have a copy of the latest check stub from Debtor which indicates which Servicing Agreements are being paid. Debtor made installment payments on November 30, 2021, January 1, 2022 and February 1, 2022 to Richard and/or his children for, among other properties, Milner, Fraser and Altoona. In your email, you acknowledge that these 3 properties have already been paid off by the underlying borrower. Under the Servicing Agreements, the entire principal amount payable from Debtor to my clients is due when the underlying loan is paid in full by the borrower. It is obvious your client continued to make regular installment payments in order to hide the fact that the underlying loans were paid off. At best, Debtor's failure to repay my clients is a breach of agreement. At worst, it is fraud. Your email, as well as materials from Guarantor, prove our case. I urge your client to carefully consider the consequences of not cooperating. My clients are providing Rob with a reasonable path to an amicable resolution. However, if your client fails to agree or delays any longer in the resolution of this matter, my clients have already authorized and instructed me to commence litigation against Debtor and Guarantor, which will seek damages arising from your client's acts. Be notified that any fraud claim will seek punitive damages. Be further notified that any lawsuit shall also seek as part of its recovery all court costs and litigation expenses, including attorney's fees. You client may avoid the burden exposure and expense of litigation simply by agreeing to the reasonable terms proposed by my clients. Demand is herein made for your client's response non later than 4:00 PM on Friday, March 4, 2022.

Be governed accordingly.

Sincerely,

**FLYNN & GOTTLIEB, P.A.**

*Jon A. Gottlieb*

Jon A. Gottlieb

JAG:sc

{00225256 1 }

Nathan T. Johns, Esq.
February 28, 2022
Page 3 of 3


cc: Angie Weiland (*via email*)
    Richard Maslia (*via email*)

**EXHIBIT D**

2020190547 DEED BOOK 28900 Pg 423
Filed and Recorded: 12/15/2020 1:46:00 PM
Recording Fee: $25.00
Prepared By:
2209073924

**Tax Parcel ID:**   **15-146-07-017; 15-146-07-018;**
                     **15-146-12-029; 15-146-12-030;**
                     **15-146-12-031**

PLEASE RETURN THIS RECORDED INSTRUMENT TO:

Nathan T. Johns, Esq.
MENDENFREIMAN LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

STATE OF GEORGIA
COUNTY OF FULTON

## LIMITED WARRANTY DEED

THIS INDENTURE, made as of the 9th day of December, 2020, between BINANAT CAPITAL, LLC, a Georgia limited liability company, as party of the first part, hereinafter called "Grantor", and SINDRE, LLC, a Georgia limited liability company, as party of the second part, hereinafter called "Grantee" (the words "Grantor" and "Grantee" to include their respective heirs, personal representatives, successors and assigns where the context requires or permits).

W I T N E S S E T H:

THAT, Grantor, for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt, adequacy and sufficiency of which being hereby acknowledged by Grantor, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, all of Grantor's interest in and to the tract or parcel of land commonly known as 891, 891S and 895 Bouldercrest Drive, Atlanta, Georgia 30312 and more particularly described on Exhibit "A", attached hereto and incorporated herein by this express reference, TOGETHER WITH every contingent remainder and right of reversion, and together with all buildings, rights, members, structures, easements, alleys, ways, appurtenances, improvements, shrubbery, trees, plants, fixtures, privileges, tenements or hereditaments, in any way belonging, relating or appertaining thereto (collectively the "Property"),  SUBJECT TO and only to all matters of record as of the date hereof (hereinafter collectively referred to as the "Exceptions").

This is the same property conveyed to Grantor by Deed Under Power of Sale dated December 1, 2020 and recorded December 2, 2020 in the deed records of DeKalb County Superior Court in Deed Book 28863 at Pages 24-28.

THAT, Grantor will, subject to the Exceptions, warrant and forever defend the right and title to Grantor's interest in and to the Property unto Grantee and the heirs, legal representatives, successors and assignees of Grantee against the claims of all persons claiming by, through or under Grantor but not otherwise.

TO HAVE AND TO HOLD the said Property unto Grantee, together with all and singular to the rights, members, easements, licenses, benefits and appurtenances thereof, to the same being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever, in FEE SIMPLE, in as full and ample a manner as the same was held, possessed and enjoyed, or might have been held, possessed and enjoyed, by the Grantor.

IN WITNESS WHEREOF, Grantor[s] has signed and sealed this Deed the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered this 9th day of December, 2020, in the presence of:

BINANAT CAPITAL, LLC,
a Georgia limited liability company



_____
Unofficial Witness

By: _Robert Storm_____ (SEAL)
Robert Storm, its President

_____
Notary Public

My commission expires: 07/31/21

> NICHOLAS SUDIK
> Notary Public – State of Florida
> Commission # GG 129940
> My Comm. Expires Jul 31, 2021

*MENDENFREIMAN LLP drafted this deed without the aid of survey or title search, upon the request of the grantor, and assumes no responsibility for accuracy.*

2023180764 DEED BOOK 28900 Pg 426

## EXHIBIT "A"

Tract 1:

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 146 of the 15th District of DeKalb County, Georgia, known as Lots 11 and 12 in Block D of the C.C. Murphy Subdivision as per plat of the same recorded in Plat Book 9, page 80, in the office of the Clerk, Superior Court of DeKalb County, Georgia, and being more particularly described as follows:

BEGINNING at an iron pin at the southwest corner of Lot 13 in Block D of said subdivision, said beginning point being located 382 feet south, as measured in a direct north and south line from Bouldercrest Drive; thence south along the rear line or Lots 33, 34 and 35 of said subdivision a distance of 50 feet to a stake; thence in a northeasterly direction along the dividing line between Lots 10 and 11 in said block a distance of 312 feet to Bouldercrest Drive; thence northwesterly along the southwesterly side of Bouldercrest Drive 50 feet to a stake; thence southwesterly along the dividing line between Lots 12 and 13 in said block a distance of 282 feet to the POINT OF BEGINNING, the same being improved property known as 891 Bouldercrest Drive (formerly East McConough Road) according to the present numbering of houses in the City of Atlanta, Georgia, and being a part of the same property conveyed by C.C. Murphy and Jack B. Stewart to Mrs. R.L. Swinney by Warranty Deed dated August 24, 1928 and recorded in Deed Book 289, page 88, DeKalb County, Georgia records.

Tract 2:

All that tract or parcel of land lying and being in land lot 146 of the 15th District of DeKalb County, Georgia, being Lots Nos. 9 and 10, Block "D" of the C. C. Murphy property, as shown on plat by C. M. Hughes, C. E. of August, 1928, recorded in Plat Book 9, page 80, DeKalb County Records, and being more particularly described as follows:

BEGINNING at a point on the southwest side of Bouldercrest Drive (formerly known as Boulder Crest Drive and as Flat Shoals Avenue) five hundred sixty four (564) feet southeasterly from the southeast corner of Cavanaugh Avenue and Bouldercrest Drive, and running thence southwesterly three hundred thirty five (335) feet to an iron pin; thence southerly fifty (50) feet to an iron pin; thence northeasterly three hundred seventy five (375) feet to Bouldercrest Drive; thence northwesterly along the southwest side of Bouldercrest Drive fifty (50) feet to the POINT OF BEGINNING; being known as 895 Bouldercrest Drive, according to the present system of numbering houses in the City of Atlanta, Georgia.

Tract 3:

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 146 of
the 15th District of DeKalb County, Georgia, known as Lots 13 and 14 in Block D of
the C.C. Murphy Subdivision as per plat of the same recorded in Plat Book 9, page
80, in the office of the Clerk, Superior Court of DeKalb County, Georgia, and being
more particularly described as follows:

BEGINNING at an iron pin at the southwest corner of Lot 13 in Block D of said
subdivision, said beginning point being located 382 feet south, as measured in a
direct north and south line from Bouldercrest Drive; thence north along the rear line
of Lots 33 and 32 of said subdivision a distance of 50 feet to a stake; thence in a
northeasterly direction along the dividing line between Lots 14 and 15 in said block a
distance of 257 feet to Bouldercrest Drive; thence southeasterly along the
southwesterly side of Bouldercrest Drive 50 feet to a stake; thence southwesterly
along the dividing line between Lots 12 and 13 in said block a distance of 282 feet to
the POINT OF BEGINNING, the same being improved property known as 891S
Bouldercrest Drive (formerly East McConough Road) according to the present
numbering of houses in the City of Atlanta, Georgia, and being a part of the same
property conveyed by C.C. Murphy and Jack B. Stewart to Mrs. R.L. Swinney by
Warranty Deed dated August 24, 1928 and recorded in Deed Book 289, page 88,
DeKalb County, Georgia records.

# EXHIBIT "D-1"

Fulton County Superior Court
***EFILED***QW
Date: 2/24/2023 3:01 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| Mashala Investments, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | NO. 2022CV363021 |
| vs. | ) | |
| | ) | |
| BinaNat Capital, LLC, Robert | ) | |
| Storm, and Sindre, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER GRANTING PLAINTIFF'S
### MOTION FOR SUMMARY JUDGMENT

**THE ABOVE-STYLED CASE** comes before the Court upon Plaintiff Mashala

Investments, LLC's ("Mashala") motion for summary judgment.

**UPON REVIEW** of the motion and all submissions therewith, and it appearing to the

Court that Mashala has presented evidence satisfying its burden of proof of its claims, and

Defendants having failed to present any response at all to such motion and thus Defendants have

failed to carry its burden to rebut or pierce Mashala's claims as a matter of law, and accordingly

that Mashala is entitled to judgment as a matter of law, it is

**NOW, THEREFORE, IT IS ORDRED ADJUDGED AND DECREED THAT:**

The Court hereby makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1.    Defendant Robert Storm ("Storm") is the owner of Defendant BinaNat Capital,

LLC ("BinaNat") and Defendant Sindre, LLC ("Sindre") (collectively, "Defendants").

2.    BinaNat is in the business of hard money loans, which is essentially providing

lending for real estate to third-party borrowers ("Obligor(s)") that may or may not fit the

conventional banking system.

    3.      Sindre is in the business of fixing and flipping properties.

    4.      Storm is the Manager of both BinaNat and Sindre and is authorized to bind BinaNat to agreements.

    5.      The money for the hard money loans made by BinaNat came from investors.

    6.      Storm would obtain money from an investor first before making a loan to an Obligor.

    7.      Once a loan was made to an Obligor, BinaNat would obtain a security deed or mortgage for the collateral and record it in the deed records.

    8.      Storm approached Mashala to do business with BinaNat and become an investor in the hard money loans.

    9.      Storm also represented to Mashala that a written servicing agreement ("Servicing Agreement") would be entered for each loan.

    10.      Storm also represented to Mashala that each hard money loan that Mashala funded would carry the same terms, namely that Mashala would be paid a rate of interest equal to 13%.

    11.      BinaNat agreed to secure the amounts funded by Mashala under each Servicing Agreement with real property as collateral that was identified in each Servicing Agreement.

    12.      BinaNat agreed to service each loan under each Servicing Agreement in exchange for a servicing fee (the "Servicing Fee").

    13.      Storm signed each Servicing Agreement twice, individually as a guarantor, and in his representative capacity as Manager for BinaNat.

    14.      Mashala provided funds over several years in the aggregate principal amount of $704,250 to BinaNat for 17 hard money loans made by BinaNat.

15.      Mashala never agreed for any money it provided to be used to fund BinaNat's business.

16.      For a period of years BinaNat paid Mashala a return of 13% of the amount provided by Mashala under each Servicing Agreement.

17.      None of the loans have been repaid to Mashala, and Storm fully admits that BinaNat owes Mashala $704,250.00 for the principal amount of the aggregate loans funded by Mashala as guaranteed by Storm.

18.      Storm admits that he took Mashala's funds and did not use it for the purpose that it was originally intended for 3 loans identified as the Broad Street Loan, the Edgewater Loan, and the Gilbert Street Loan, and failed to inform Mashala that he used the money in a different manner. Storm and BinaNat failed to rebut any evidence that they intended to use Mashala's funds for purposes other than making these 3 loans.

19.      Storm admits that he used Mashala's funds to make 14 loans, and when these loans were repaid by the Obligors he failed to inform Mashala of the repayment and he used the repaid funds for other purposes instead of repaying Mashala. Storm and BinaNat failed to rebut any evidence that they intended to use the funds repaid by the Obligors for purposes other than repaying Mashala.

20.      BinaNat made regular interest payments under the loans to Mashala but ceased making such payments once this lawsuit was filed. Aggregate interest in the amount of $80,871.38[1] has accrued under the loans since BinaNat ceased making such payments to Mashala.

21.      Storm and BinaNat made regular interest payments to Mashala for the intent and purpose of tricking Mashala by concealing the fact that BinaNat failed to make the Broad Street

---

[1] Interest is calculated from April 5, 2022 through February 23, 2023.

Loan, the Edgewater Loan, and the Gilbert Street Loan. Storm and BinaNat failed to present any rebuttal.

22.      Storm and BinaNat made regular interest payments to Mashala for the intent and purpose of tricking Mashala by concealing the fact that the Obligors repaid the 14 loans to BinaNat and that Storm and BinaNat used the repaid funds for purposes other than repaying Mashala. Storm and BinaNat failed to present any rebuttal.

23.      On February 28, 2022, Mashala delivered its written demand to Storm and BinaNat.

## CONCLUSIONS OF LAW

1.      Mashala made a prima facie case that (a) Storm and BinaNat breached the Servicing Agreements, (b) Defendants converted funds or assets belonging to Mashala, and (c) Defendants defrauded Mashala. Defendants failed to point to specific evidence giving rise to a triable issue and thus failed to rebut or pierce Mashala's case.

2.      Despite demand, Storm and BinaNat have failed to pay the principal amount of $704,250.00 owed to Mashala.

Breach of Contract

3.      The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken. Norton v. Budget Rent a Car Sys., 307 Ga. App. 501, 502, 705 S.E.2d 305, 306 (2010).

4.      The purpose of the Servicing Agreements was to protect the parties and outline the roles, obligations, duties and benefits.  BinaNat did not repay Mashala, despite the fact that (a) either the loans were never made, or (b) BinaNat was paid in full or foreclosed on the collateral securing the underlying loans made to the Obligors.

5.      Storm admits he and BinaNat owe Mashala the aggregate amount of $704,250.00

and takes accountability for his actions. Storm also fully admits that the only reason he has not

repaid Mashala is because of lack of money. As a result of Defendants' actions, Mashala has

sustained damages in the principal amount of $704,250.00.

6.    Storm and BinaNat are liable to Mashala for breach of contract in the following

amounts:    Principal:                $704,250.00

Interest:                $ 80,871.38[2]

Court Costs:            $    308.73

Attorney's Fees and Costs:    $ 60,433.29[3]

TOTAL:                $845,863.40

Conversion

7.    To establish a claim for conversion, the complaining party must show (1) title to

the property or the right of possession, (2) actual possession in the other party, (3) demand for

return of the property, and (4) refusal by the other party to return the property. Trey Inman &

Assocs., P.C. v. Bank of Am., N.A., 306 Ga. App. 451, 457, 702 S.E.2d 711, 716 (2010). [A]

secured creditor has a right of action for conversion if property subject to its security interest *is

disposed of without the creditor's authorization.* The elements of such a claim include the showing

of a valid security interest in the debtor's property, disposition of that property, absence of the

creditor's authorization for the disposition, and resulting damage to the creditor. Id., at 457.

8.    Mashala delivered funds for 3 loans that were never made or never closed. Instead

of notifying Mashala and returning the money, Storm secretly used it for other purposes such as

business expenses and interest payments. None of these purposes were ever authorized or agreed

to by Mashala. Despite demand, Mashala was never repaid.

---

[2] See footnote 1
[3] See Exhibit 1 – Plaintiff's attorney presented predicate testimony at the February 23, 2023 hearing.

9.      BinaNat also failed to inform Mashala when the underlying loans were repaid by the Obligors.  Instead of notifying Mashala and repaying Mashala, Storm secretly used it for other purposes such as business expenses and interest payments. None of these purposes were ever authorized or agreed to by Mashala. Despite demand, Mashala was never repaid.

10.      Storm and BinaNat are liable to Mashala for conversion in the following amounts:

| | |
|---|---|
| Principal: | $704,250.00 |
| Interest: | $ 80,871.38[4] |
| Court Costs: | $     308.73 |
| Attorney's Fees and Costs: | $ 60,433.29[5] |
| TOTAL: | $845,863.40[6] |

Fraud

11.      The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff.  Kilroy v. Alpharetta Fitness, Inc., 295 Ga. App. 274, 275–76, 671 S.E.2d 312, 313 (2008).  While in many instances mere silence cannot be made the basis of fraud, yet, where the circumstances are of such a nature as to impose a duty upon one to speak, and where he deliberately fails to do so, his neglect will be deemed a deliberate suppression of the truth, and will amount to constructive, if not actual, fraud. Crossing Park Props., LLC v. Archer Capital Fund, LP, 311 Ga. App. 177, 182, 715 S.E.2d 444, 448 (2011).

12.      Fraud is exceedingly subtle in its nature. There are infinite means by which it can be accomplished. In its conception human ingenuity is limitless in its capabilities. It is therefore

---

[4] See footnote 1
[5] See Exhibit 1 – Plaintiff's attorney presented predicate testimony at the February 23, 2023 hearing.
[6] A separate hearing for punitive damages shall be scheduled upon Plaintiff's request.

impossible to state any general rule by which particular frauds are to be identified. Classification is almost, if not quite, impossible. It may be perpetrated by willful misrepresentations made by one person to another, with a design to mislead and which do actually mislead another. It may be perpetrated by signs and tricks, and even silence may in some instances amount to fraud." Wood v. Cincinnati Safe & Lock Co., 96 Ga. 120, 123-24 (22 SE 909) (1895).

13.     Concealment of material facts may amount to fraud . . . where the concealment is of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover [cit.]; and misrepresentation may be perpetrated by acts as well as words, and by artifices designed to mislead. [Cit.] Woodall v. Orkin Exterminating Co., 175 Ga. App. 83, 84, 332 S.E.2d 173, 174 (1985).

14.     "Concealment per se amounts to actual fraud when from any reason one party has a right to expect full communication of the facts from another. This is a well-settled principle recognized both by the civil and the moral law." Id., 175 Ga. App. at 85.

15.     Storm failed to notify Mashala when loans funded by Mashala failed to close and where BinaNat was repaid for loans that were funded by Mashala. Storm remained silent to mislead Mashala so that BinaNat and Storm could use Mashala's money for other purposes such as business expenses and interest payments. None of these purposes were ever authorized or agreed to by Mashala.

16.     BinaNat and Storm also took affirmative steps by continuing to deliver interest payments to hide the fact the loans were repaid.  These steps were taken to trick Mashala by concealing the fact that (1) the loan was never made with Mashala's funds, or (2) BinaNat had been repaid the underlying loans by or for the Obligers.

17.     Storm and BinaNat are liable to Mashala for fraud in the following amounts:

| | |
|---|---|
| Principal: | $704,250.00 |
| Interest: | $ 80,871.38[7] |
| Court Costs: | $    308.73 |
| Attorney's Fees and Costs: | $ 60,433.29[8] |
| TOTAL: | $845,863.40[9] |

18.    Defendants having failed to point to specific evidence giving rise to a triable issue and thus failed to rebut or pierce Mashala's case for breach of contract, conversion and fraud, the Court orders as follows:

**ORDER OF THE COURT**

IT IS HEREBY ORDERED that summary judgment is hereby GRANTED in favor of Mashala against Defendants as to Mashala's claims for breach of contract, conversion, fraud and attorney's fees, as there is no genuine issue as to any material fact. Mashala shall elect its remedy within ten (10) business days from the entry of this Order,[10] whereupon a judgment shall immediately be issued and entered and the Clerk shall immediately issue and record in the public lien records for Fulton County a Writ of Fieri Facias in favor of Mashala. A hearing to determine the remaining damages in favor Mashala shall promptly be scheduled.

SO ORDERED this 24th day of February, 2023.

_____
Honorable Ural Glanville
Chief Judge, Superior Court of Fulton County, Georgia

---

[7] See footnote 1
[8] See Exhibit 1 – Plaintiff's attorney presented predicate testimony at the February 23, 2023 hearing.
[9] A separate hearing for punitive damages shall be scheduled upon Plaintiff's request.
[10] *See*, Wanna v. Navicent Health, Inc., 357 Ga. App. 140, 157, 850 S.E.2d 191, 206 (2020); UIV Corp. v. Oswald, 139 Ga. App. 697, 699, 229 S.E.2d 512 (1976).

Prepared and presented by:

Jon A. Gottlieb, Esq.
Georgia Bar No. 303060
FLYNN & GOTTLIEB, P.A.
800 Johnson Ferry Road, N.E.
Atlanta, Georgia 30342-1417
(404) 497-8000 Telephone
(404) 497-8009 FAX
jong@lawfg.com
Attorneys for Plaintiff
Mashala Investments, LLC

EXHIBIT

1

# JON A. GOTTLIEB, P.C.
**800 JOHNSON FERRY ROAD, N.E.**
**ATLANTA, GA 30342-1417**
**404-497-8000**

February 22, 2023

Invoice submitted to:
Richard Maslia & Angie Weiland
c/o The Victory Group, Inc.
3115 Piedmont Road
Suite F-201
Atlanta, GA 30305

In Reference To:  Rob Storm

Professional Services

| | | | Rate | Tax# | Amount |
|---|---|---|---|---|---|
| 2/5/2022 - | JAG | Review of materials from Angie W. Online research of Bouldercrest proiperty. Several telephone conversations with Richard M., Angie W. and Nathan J. | 425.00/hr | | 850.00 |
| 2/8/2022 - | JAG | Several email communications with Richard, Angie and Nathan J. | 425.00/hr | | NO CHARGE |
| 2/10/2022 - | JAG | Online reserch for properties. Several email communications with Nathan, Richard & Anglie, | 425.00/hr | | 637.50 |
| 2/15/2022 - | JAG | Phone conference with Richard M. and Angie W. | 425.00/hr | | 127.50 |
| 2/17/2022 - | JAG | Place telephone call to Nathan J. Transmit email to Nathan J. Followup phone call with Nathan J. Email communication with Richard and Angie. | 425.00/hr | | 425.00 |
| 2/21/2022 - | JAG | Place telephone call to Nathan J. Phone conference with Richard. | 425.00/hr | | 127.50 |
| 2/24/2022 - | JAG | Phone conference with Richard & Angie. Several email communications with Nathan  J. | 425.00/hr | | 425.00 |

Richard Maslia & Angie Weiland                                                    Page    2

|  |  |  | Rate | Tax# | Amount |
|---|---|---|---|---|---|
| 2/25/2022 - | JAG | Email communication with Nathan J. Transmit to Richard & Angie. | 425.00/hr |  | 127.50 |
| 2/26/2022 - | JAG | Phone conference with Richard, Angie & Skip.. | 425.00/hr |  | 127.50 |
| 2/28/2022 - | JAG | Several email communications with Angie and Richard. Prepare and send demand letter to Nathan J. | 425.00/hr |  | 1,062.50 |
| 3/1/2022 - | JAG | Email communication with Richard M. Re: lis pendens question | 425.00/hr |  | NO CHARGE |
| 3/4/2022 - | JAG | Phone conference with Richard and Angie. Receipt and review of spreadsheet from Angie. Several email communications with Nathan J. | 425.00/hr |  | 425.00 |
| 3/7/2022 - | JAG | Several email communications with Richard, Angie and Nathan J. | 425.00/hr |  | 212.50 |
| 3/8/2022 - | JAG | Email communication with Angie, Richard and Nathan J. Preparation of Note, DSD and Owner's Affidavit. | 425.00/hr |  | 1,275.00 |
| 3/9/2022 - | JAG | Prepare modifications of draft to Note, DSD and Owner's Affidavit. Several email communications with  Angie, Richard, Laurie C. and Nathan J. Transmit to Nathan J. | 425.00/hr |  | 850.00 |
| 3/10/2022 - | JAG | Several email communications with Angie, Richard and Nathan J. Re: sipdate and request for status | 425.00/hr |  | 127.50 |
| 3/11/2022 - | JAG | Several email communications with Angie and Richard. Onlineresearch of Bouldercrest buyer. | 425.00/hr |  | 212.50 |
| 3/15/2022 - | JAG | Several email communications with Angie, Richard and Nathan J. Receipt and review of Rob's counteroffer | 425.00/hr |  | 425.00 |
| 3/22/2022 - | JAG | Email communication with Thomas C. and Richard M. | 425.00/hr |  | NO CHARGE |
| 3/24/2022 - | JAG | Preparation of draft Complaint. Transmit to Richard & Angie. | 425.00/hr |  | 2,125.00 |
| 3/28/2022 - | JAG | Several email communications with Richard M. and Angie W. Re: Complaint & exhibits | 425.00/hr |  | 170.00 |

Richard Maslia & Angie Weiland                                                      Page       3

|  |  |  | Rate | Tax# | Amount |
|---|---|---|---|---|---|
| 3/29/2022 - | JAG | Several email communications with Angie & Richard. Prepare modifications of draft to Complaint. | 425.00/hr | | 212.50 |
| 3/30/2022 - | JAG | Several email communications with Angie & Richard. Prepare modifications of draft to Complaint. Transmit revised Verification to Angie. | 425.00/hr | | 212.50 |
| 3/31/2022 - | JAG | Meeting with Angie & Richard. Prepare modifications of draft to Complaint. Begin assembling for filing. | 425.00/hr | | 637.50 |
| 4/1/2022 - | JAG | Review of Eric R. Servicing Agreements. Initial preparation of Complaint. | 425.00/hr | | 425.00 |
| 4/4/2022 - | JAG | Email communication with process server. Several telephone conversations and email communications with  Angie & Richard. Online research Re: Jacksonville property. Prepare modifications of draft to Complaint. | 425.00/hr | | 425.00 |
| - | JAG | Email communication with process server. Several telephone conversations and email communications with  Angie & Richard. Online research Re: Jacksonville property. Prepare modifications of draft to Complaint. | 425.00/hr | | 425.00 |
| 4/5/2022 - | JAG | Final preparation and assembly of Complaint. Submission to Clerk. | 425.00/hr | | 425.00 |
| 4/6/2022 - | JAG | Receipt and review of filed Summons and Complaint. Transmit to process server. Obtain and transmit photo  and other identifying information of Rob S. to process server. | 425.00/hr | | 212.50 |
| 4/18/2022 - | JAG | Several email communications with Angie W. and process server. | 425.00/hr | | NO CHARGE |
| 4/19/2022 - | JAG | Several email communications with Richard M. and process server. | 425.00/hr | | NO CHARGE |
| 4/20/2022 - | JAG | Research Bay Point capital suit. Several email communications with Process Server,  Angie & Richard. | 425.00/hr | | NO CHARGE |
| 4/21/2022 - | JAG | Several email communications with Process Server, Angie & Richard. | 425.00/hr | | NO CHARGE |

Richard Maslia & Angie Weiland                                                    Page      4

|  |  |  | Rate | Tax# | Amount |
|---|---|---|---|---|---|
| 4/25/2022 - | JAG | Email communication with Richard M. Re: whereabouts of Storm last weekend in April. | 425.00/hr | | NO CHARGE |
| 4/27/2022 - | JAG | Phone conference with Richard & Angie. Several telephone conversations and email communications with  process server. Re: status of service on Storm. | 425.00/hr | | NO CHARGE |
| 4/28/2022 - | JAG | Several telephone conversations and email communications with  process server. Several email communications with Richard & Angie and Eric. Re: status of service on Storm. | 425.00/hr | | NO CHARGE |
| 4/29/2022 - | JAG | Several email communications with Richard & Angie and process server Re: FL and NC service attempts. | 425.00/hr | | NO CHARGE |
| 5/2/2022 - | JAG | Several email communications with process server, Richard & Angie. Preparation and filing of Lis Pendens. | 425.00/hr | | 425.00 |
| 5/3/2022 - | JAG | Receipt and review of recorded Lis Pendens. Prepare and send cover letter and documents to Nathan J. via email. Receipt and review of email confirmation from Nathan J. | 425.00/hr | | 425.00 |
| 5/6/2022 - | JAG | Email communication with Richard & Angie. Online research of Duval County records. Assemble & transmit materials and request to FL attorney Re: Lis Pendens | 425.00/hr | | 850.00 |
| 5/9/2022 - | JAG | Email communication with Angie and Richard Re: terminating Servicing Agreements. | 425.00/hr | | NO CHARGE |
| 5/10/2022 - | JAG | Phone conference with FL attorney Re: Lis Pendens | 425.00/hr | | 127.50 |
| 5/17/2022 - | JAG | Phone conference with FL attorney. Email communication with Richard & Angie Re: Florida lis pendens | 425.00/hr | | 212.50 |
| 5/24/2022 - | JAG | Several email communications with process server and Richard M. | 425.00/hr | | NO CHARGE |

Richard Maslia & Angie Weiland                                                             Page      5

|  |  |  | Rate | Tax# | Amount |
|---|---|---|---|---|---|
| 5/25/2022 - | JAG | Several telephone conversations with Hal L. and Richard. Receipt and review of Stipulation regarding filing responsive pleadings. | 425.00/hr |  | 170.00 |
| 5/27/2022 - | JAG | Several email communications with Richard & Angie. Re: Servicing Agreement terms. | 425.00/hr |  | NO CHARGE |
| 5/30/2022 - | JAG | Several email communications with Richard & Angie. Re: Storm's FB postings. | 425.00/hr |  | NO CHARGE |
| 5/31/2022 - | JAG | Email communication with Richard M. Re: Storm FB posts | 425.00/hr |  | NO CHARGE |
| 6/6/2022 - | JAG | Receipt and filing of Corrected Affidavits of Service. | 425.00/hr |  | NO CHARGE |
| 6/13/2022 - | JAG | Receipt and review of Affidavit of Service upon Robert Storm. Filing same with Clerk. | 425.00/hr |  | 127.50 |
| - | JAG | Email communication with process server, Richard & Angie. | 425.00/hr |  | NO CHARGE |
| 6/15/2022 - | JAG | Email communication with Richard M. Re: Deed from PV Capital, LLC to Homestead 1862 , LLC. Obtain copy online. | 425.00/hr |  | NO CHARGE |
| 6/16/2022 - | JAG | Receipt and review of Stipulations from Hal L. | 425.00/hr |  | NO CHARGE |
| 6/21/2022 - | JAG | Several telephone conversations and email communications with Hal L. and Richard M. Re: Storm's request for additional time and Richard's inquiry of Bouldercrest closing. Receipt and review of Bouldercrest PSA. Email communication with closing attorney. | 425.00/hr |  | 340.00 |
| 6/22/2022 - | JAG | Email communication with Charles J. Re: Bouldercrest closing | 425.00/hr |  | NO CHARGE |
| 6/23/2022 - | JAG | Receipt, review and catalogue Answer. Several email communications with Richard M. and Angie W. | 425.00/hr |  | 425.00 |
| 6/29/2022 - | JAG | Receipt and review of information from Richard. Phone conference with Richard & Angie. Follow up research on Lucile | 425.00/hr |  | 1,275.00 |

Richard Maslia & Angie Weiland                                                    Page     6

|              |     |                                                                                                                                                                                                                                                                                                                       | Rate      | Tax# | Amount |
|--------------|-----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-----------|------|--------|
|              |     | property. Initial preparation of RFPD upon NAL.                                                                                                                                                                                                                                                                          |           |      |        |
| 6/30/2022 -  | JAG | Phone conference with Hal L. Several email communications with Richard & Angie. Online research of Georgia & Delaware Secretary of State records. Preparation of RFPD to National Arena League and cover letter. Preparation and filing of Certificate of Service with Court. FedEx to Nathan J. Transmit copies to Hal L. and National Arena League officials. | 425.00/hr |      | 1,700.00 |
| 7/1/2022 -   | JAG | Online research of deeds/transactions. Preparation of Richard's Affidavit. Several email communications with Richard M. Initial preparation of Angie's Affidavit.                                                                                                                                                          | 425.00/hr |      | 1,700.00 |
| 7/5/2022 -   | JAG | Prepare modifications of draft to Richard's Affidavit. Transit to Richard M.                                                                                                                                                                                                                                              | 425.00/hr |      | 170.00 |
| 7/6/2022 -   | JAG | Preparation of Angie's Affidavit and revisions to Richard's Affidavit. Several email communications with Angie & Richard.                                                                                                                                                                                                 | 425.00/hr |      | 850.00 |
| 7/7/2022 -   | JAG | Online research for properties securing Angie's loans. Final preparation of Affidavits for Angie & Richard. Several email communications and meeting with Angie & Richard to sign.                                                                                                                                         | 425.00/hr |      | 850.00 |
|          -   | LO  | Research Georgia real estate index for sale information for Angies properties by Binanat                                                                                                                                                                                                                                  | 150.00/hr |      | 225.00 |
| 7/11/2022 -  | JAG | Online research for deed records for Angie's loans. Several email communications with Angie.                                                                                                                                                                                                                              | 425.00/hr |      | 425.00 |
| 7/28/2022 -  | JAG | Several telephone conversations and email communications with Richard M. Re: payment. Several email communications with Angie.                                                                                                                                                                                            | 425.00/hr |      | NO CHARGE |
| 8/2/2022 -   | JAG | Receipt and review of RDM- motion to dismiss from instant action. Preparation of modifications thereto. Transmit to Hal L. Several email communications with Hal L., Richard M. and Angie W.                                                                                                                               | 425.00/hr |      | 637.50 |

Richard Maslia & Angie Weiland                                                    Page      7

| | | | | Rate | Tax# | Amount |
|---|---|---|---|---|---|---|
| 8/4/2022 - | JAG | ~~Receipt and review of Defendants' response to Motion for Receiver.~~ Several email communications with Richard M., Angie W. and Hal L. Prepare and send 6.4(B) letter to Nathan Johns Re: non-party RFPDs. Deliver by had and transmit via email. | | 425.00/hr | | ~~850.00~~ 425.00 |
| 8/5/2022 - | JAG | Several email communications with Angie W. and Hal L. Transmit consent to filing Motion to Drop RDM to Hal L. ~~Review of response to receivership motion.~~ | | 425.00/hr | | ~~425.00~~ 200.00 |
| 8/8/2022 - | JAG | Receipt and review of Response to RFPD upon Non-Parties National Arena League Holdings, LLC and National Arena League Acquisition, LLC. Several email communications with Richard M., Angie W. and Elizabeth S. | | 425.00/hr | | 212.50 |
| 8/11/2022 - | JAG | Phone conference with Hal L. Re: Bouldercrest listing | | 425.00/hr | | 85.00 |
| 8/12/2022 - | JAG | Receipt and review of Bouldercrest listing agreement. Email communication with Angie. | | 425.00/hr | | 127.50 |
| 8/29/2022 - | JAG | Email communication with Angie Re: status | | 425.00/hr | | NO CHARGE |
| 9/6/2022 - | JAG | Several telephone conversations with Hal L. Several email communications with Richard & Angie. Research online docket for any recent filings. ~~Preparation for September 7 hearing.~~ | | 425.00/hr | | ~~1,487.50~~ 250.00 |
| 9/30/2022 - | JAG | Initial preparation of discovery. | | 425.00/hr | | 425.00 |
| 10/10/2022 - | JAG | Preparation of discovery. Transmit to Angie. | | 425.00/hr | | 2,975.00 |
| 10/11/2022 - | JAG | Final preparation of 1st discovery. Several email communications with Angie W. Filing Certificate with Court. Serve upon opposing counsel via mail. | | 425.00/hr | | 425.00 |
| 10/14/2022 - | JAG | Email communication with Hal L. Re: scheduling deposition | | 425.00/hr | | NO CHARGE |

Richard Maslia & Angie Weiland                                                                Page    8

|  |  |  | Rate | Tax# | Amount |
|---|---|---|---|---|---|
| 10/18/2022 - | JAG | Preparation and filing of Notice of deposition of Robert Storm. Email communication with Angie W. | 425.00/hr |  | 340.00 |
| 10/20/2022 - | JAG | Receipt and review of filed Notice of Deposition of Storm. Email communication with Hal L. | 425.00/hr |  | 127.50 |
| 11/9/2022 - | JAG | Email communication with Hal L. Re: discovery due date | 435.00/hr |  | 87.00 |
| 11/10/2022 - | JAG | Transmit discovery in Word to Storm's attorney via email. | 435.00/hr |  | NO CHARGE |
| 11/14/2022 - | JAG | Receipt and initial review of discovery responses. Several email communications with Angie W. | 435.00/hr |  | 217.50 |
| 11/17/2022 - | LO | Review Defendant's responses to RFA, RPD and Interrogatories and prepare outline. | 150.00/hr |  | 240.00 |
| 11/18/2022 - | JAG | Phone conference with Angie W. Review of discovery responses. Preparation of 6.4(B) letter. | 435.00/hr |  | 1,305.00 |
| - | LO | Legal research re: Request for Admissions objections | 150.00/hr |  | 45.00 |
| 11/21/2022 - | JAG | Review of discovery responses. Preparation of and transmit 6.4(B) letter to Hal L. Place telephone call to Hal L. Initial preparation for Storm deposition. | 435.00/hr |  | 1,957.50 |
| 11/22/2022 - | JAG | Email communication with Hal L. and Angie W. Re: discovery due from Defendants. | 435.00/hr |  | 130.50 |
| 11/26/2022 - | JAG | Email communication with Hal L. Receipt and review of spreadsheet. | 435.00/hr |  | 174.00 |
| 11/28/2022 - | JAG | Several email communications with Hal L. and court reporter. Several telephone conversations and email communications with Angie W. Preparation for Storm deposition. | 435.00/hr |  | 1,305.00 |
| 11/29/2022 - | JAG | Preparation for Storm deposition. | 435.00/hr |  | 1,957.50 |

Richard Maslia & Angie Weiland

Page    9

| Date | | | Description | Rate | Tax# | Amount |
|---|---|---|---|---|---|---|
| 11/30/2022 | - | JAG | Conduct Storm deposition. Follow up research and phone conference with Angie W. | 435.00/hr | | 1,522.50 |
| 12/1/2022 | - | JAG | Several telephone conversations and email communications with Hal L. Re: Consent Judgment. | 435.00/hr | | 130.50 |
| 12/3/2022 | - | JAG | Phone conference with Angie W. Re: Rob's latest offer | 435.00/hr | | 130.50 |
| 12/5/2022 | - | JAG | Several email communications with Angie W. Several telephone conversations and email communications with  Hal L. Re: Consent Judgment | 435.00/hr | | 217.50 |
| 12/6/2022 | - | JAG | Several telephone conversations and email communications with Hal L. Several email communications with Angie W. Re: terms of proposed Consent Judgment.  Initial preparation of Consent Judgment. Email communication with Angie W. Calculate payment schedule. | 435.00/hr | | 1,740.00 |
| 12/7/2022 | - | JAG | Final preparation of first draft of Consent Judgment. Several email communications with Angie W. Transmit to Hal L. | 435.00/hr | | 1,740.00 |
| 12/8/2022 | - | JAG | Several telephone conversations and email communications with Hal L. Several email communications with Angie W. Prepare modifications of draft to Consent Judgment. Preparation of Schedule 1. Transmit to Hal L. | 435.00/hr | | 1,087.50 |
| 12/9/2022 | - | JAG | Receipt and review of Rob's revisions to Consent Judgment. Several telephone conversations and email communications with Hal L. Legal research concerning MSJ. Initial preparation of MSJ. prepare and send Affidavit signature page to Angie W. | 435.00/hr | | 1,522.50 |
| 12/12/2022 | - | JAG | Receipt and initial review of Storm deposition transcript. | 435.00/hr | | 435.00 |
| 12/13/2022 | - | LO | Prepare digest of Robert Storm deposition transcript. | 150.00/hr | | 135.00 |
| | - | JAG | Review of deposition transcript. Preparation of MSJ. | 435.00/hr | | 870.00 |

Richard Maslia & Angie Weiland                                                          Page    10

|  |  |  | Rate | Tax# | Amount |
|---|---|---|---|---|---|
| 12/14/2022 - | LO | Review file and prepare Statement of Facts and Theory of Recovery for motion for summary judgment | 150.00/hr | | 945.00 |
| 12/15/2022 - | LO | Revise Angela Wieland Affidavit and Statement of Facts for motion for summary judgment | 150.00/hr | | 105.00 |
| - | JAG | Phone conference with Hal L. Email communication with Eric R. ReL settlement terms | 435.00/hr | | 174.00 |
| - | JAG | Legal research concerning admissions. Preparation of Angie's affidavit. | 435.00/hr | | 435.00 |
| 12/16/2022 - | LO | Prepare motion for summary judgment and draft of supporting brief. | 150.00/hr | | 705.00 |
| - | JAG | Meeting with Angie W. Prepare Affidavit and MSJ Statement of Facts and Theory of Recovery. | 435.00/hr | | 1,522.50 |
| 12/19/2022 - | JAG | Legal research concerning fraud, conversion, and attorney's fees. Continued preparation of summary judgment documents. | 435.00/hr | | 1,522.50 |
| 12/20/2022 - | LO | Legal research re: fraud and attorneys fees; revise motion for summary judgment | 150.00/hr | | 270.00 |
| - | JAG | Final preparation and assembly of summary judgment documents. Filing with Court. | 435.00/hr | | 1,740.00 |
| 1/27/2023 - | JAG | Phone conference with client. | 435.00/hr | | NO CHARGE |
| 1/30/2023 - | JAG | Online research of docket. Place telephone call to Staff Attorney Re: our MSJ | 435.00/hr | | 174.00 |
| 1/31/2023 - | JAG | Legal research and several email communications with Angie and FL attorney Re: Clerk's Default. Place telephone call to Court. Re: scheduling MSJ hearing | 435.00/hr | | NO CHARGE |
| 2/2/2023 - | JAG | Prepare and send letter to Emily Winkle Re: Bouldrcrest lis pendens | 435.00/hr | | 348.00 |

Richard Maslia & Angie Weiland

Page    11

| Date | | Description | Rate | Tax# | Amount |
|---|---|---|---|---|---|
| 2/3/2023 - | JAG | Phone conference with Hal L. Email communication with Clerk. Initial preparation of proposed Order. | 435.00/hr | | NO CHARGE |
| 2/4/2023 - | LO | Prepare proposed order granting Plaintiff's motion for summary judgment. | 150.00/hr | | 255.00 |
| 2/6/2023 - | JAG | Preparation of draft Order granting MSJ. Legal research concerning breach of contract fraud and conversion. | 435.00/hr | | 870.00 |
| 2/7/2023 - | JAG | Review of MSJ Brief and legal research regarding MSJ claims. Final preparation of draft Order. Transmit to Staff Attorney. | 435.00/hr | | 1,305.00 |
| 2/13/2023 - | JAG | Several email communications with Richard M., Angie W.  and Court. Pull Notice of Hearing from online docket. | 435.00/hr | | 217.50 |
| 2/17/2023 - | LO | Prepare outline for MSJ hearing | 150.00/hr | | 150.00 |
| 2/22/2023 - | JAG | Several telephone conversations with Hal L., Judge Glanville and client. Transmit proposed Order to Court. Preparation for February 23, 2023 hearing. | 435.00/hr | | 870.00 |
| 2/23/2023 - | JAG | Attend February 23, 2023 hearing (and secure judgment and Fi.Fa. - estimate) | 435.00/hr | | 870.00 |

For professional services rendered    163.10    ~~$60,551.00~~
$58,663.50

Additional Charges :

| Date | | Description | Qty/Price | Amount |
|---|---|---|---|---|
| 4/5/2022 - | JAG | Filing Fee - Complaint | 1 308.73 | 308.73 |
| 5/2/2022 - | JAG | Filing fee to clerk -  Lis Pendens. | 1 29.75 | 29.75 |
| 5/3/2022 - | JAG | Service fee to ACL - Sindre (RDM / Mashala suit) | 1 50.00 | 50.00 |
| - | JAG | Service fee to ACL - BinaNat (Robbins suit) | 1 75.00 | 75.00 |
| - | JAG | Service fee to ACL - BinaNat (RDM / Mashala suit) | 1 75.00 | 75.00 |

Richard Maslia & Angie Weiland                                                          Page    12

| | | | Qty/Price | Tax# | Amount |
|---|---|---|---|---|---|
| 5/18/2022 - | JAG | Service Fee to ACL - Storm (RDM / Mashala suit) | 1 125.00 | | 125.00 |
| 6/1/2022 - | JAG | Copy expense. | 17 0.15 | | 2.55 |
| 6/13/2022 - | JAG | Service fee upon Rob Storm. | 1 75.00 | | 75.00 |
| 6/30/2022 - | JAG | FedEx cover letter and discovery to Nathan J. | 1 40.00 | | 40.00 |
| 9/1/2022 - | JAG | Copy expense. | 5 0.15 | | 0.75 |
| 9/7/2022 - | JAG | Court Reporter fee to Carl R. Forté, RMR, CRR, CRC. | 1 20.00 | | 20.00 |
| 11/30/2022 - | JAG | Copy expense. | 46 0.15 | | 6.90 |
| 12/15/2022 - | JAG | Court Reporter expense - Storm deposition | 1 925.06 | | 925.06 |
| 12/31/2022 - | JAG | Copy expense. | 237 0.15 | | 35.55 |
| - | JAG | Color copy expense. | 2 0.25 | | 0.50 |

Total costs                                                               $1,769.79

GRAND TOTAL:          $60,433.29

# EXHIBIT "D-2"

Fulton County Superior Court
***EFILED***QW
Date: 3/2/2023 4:16 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

Mashala Investments, LLC,        )
                             )
        Plaintiff,           )
                             )
vs.                          )     CIVIL ACTION FILE
                             )     NO. 2022CV363021
BinaNat Capital, LLC, Robert   )
Storm, and Sindre, LLC,        )
                             )
        Defendants.      )

## PLAINTIFF'S ELECTION OF REMEDY AND ENTRY OF JUDGMENT

THE COURT ENTERED its Order in this action upon Plaintiff Mashala Investments, LLC's ("Mashala") Motion for Summary Judgment on February 24, 2023, granting Mashala the right to elect its remedy between the Court's award of breach of contract, conversion and fraud. Within 10 business days of the entry of said Order, Mashala hereby elects the remedy of fraud as set forth in the Order, and judgement is hereby awarded in favor of Mashala against BinaNat Capital, LLC and Robert Storm in the following amounts:

| | |
|---|---|
| Principal: | $704,250.00 |
| Interest: | $ 80,871.38 |
| Court Costs: | $     308.73 |
| Attorney's Fees and Costs: | $ 60,433.29 |
| TOTAL: | $845,863.40 |

IT IS HEREBY FURTHER ORDERED AND ADJUDGED that the Clerk immediately enter this judgment and issue and record in the public lien records for Fulton County a Writ of Fieri Facias in favor of Mashala; and

{00238759 1 }

IT IS HEREBY FURTHER ORDERED AND ADJUDGED that Sindre, LLC is prohibited from financing or transferring 891 Bouldercrest Drive in Atlanta, DeKalb County, Georgia until the monetary portion of this judgment is satisfied.

SO ORDERED this <u>2nd</u> day of March, 2023.

<u>                                       </u>
Honorable Ural Glanville
Chief Judge, Superior Court of Fulton County, Georgia

Prepared and submitted by:

<u>/s/ Jon A. Gottlieb</u>
Jon A. Gottlieb, Esq.
Georgia Bar No. 303060
FLYNN & GOTTLIEB, P.A.
800 Johnson Ferry Road, N.E.
Atlanta, Georgia 30342-1417
(404) 497-8000 Telephone
(404) 497-8009 FAX
jong@lawfg.com
Attorneys for Plaintiff
Mashala Investments, LLC

# EXHIBIT "E"

## WRIT OF FIERI FACIAS
## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

CIVIL ACTION NUMBER __2022CV363021__

JUDGMENT DATE __03/02/23__

Plaintiff's Attorney – Name, Address & Telephone

Name: __JON A GOTTLIEB__

Address:
__FLYNN & GOTTLIEB PA__
__800 JOHNSON FERRY RD NE__
__ATLANTA GA 30342-1417__

Telephone & Area Code __404-497-8000__

Fi. Fa. In Hands of:_____

_____

Lien  5615 Pg  269
Filed and Recorded Mar-14-2023 03:56pm
2023-0101334
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

### CANCELLATION

The within and forgoing Fi. Fa. Having been paid in full
the Clerk of Superior Court is hereby directed to cancel it
of this _____ day of _____ 20 _____

Signature: _____

Title: _____

MASHALA INVESTMENTS LLC

Plaintiff(s)

VS.

BINANAT CAPITAL LLC, ROBERT STORM

Defendant(s)

To all and singular the sheriffs of the State and their
lawful deputies:

In the above styled case, and on the judgment date set
out, the plaintiff(s) named above, judgment in the
following sums:

| | | |
|---|---|---|
| Principal | $ | 704,250.00 |
| Interest | $ | 80,871.38 |
| Interest – Other | $ | |
| Attorney's Fees | $ | 60,433.29 |
| Court Cost | $ | 308.73 |
| Totals | $ | |

NOTE:_____

_____

with future interest upon said principal amount from the
date of the judgment at the legal rate.

Therefore, YOU ARE COMMANDED, that of the goods
and chattels, land and tenements of said defendant(s).
and ESPECIALLY/ONLY of the following described
property, to wit:

YOU cause to be made the several sums set out in the forgoing recital of the judgment in this cause and have the
said several sums of money before the Superior Court of this County at the next term of court, with this Writ to render
to said plaintiff(s), interest, attorney fees and costs aforesaid.

Witness the Honorable __URAL GLANVILLE__ Judge of Said Court, this the
__13TH__ day of __MARCH, 2023__ .

Cathelene Robinson, Clerk of Superior Court

By_____

Deputy Clerk

Entered on General Execution Docket at
Page _____ this _____ day of _____, 20 ____

166-16-689

## <u>CERTIFICATE OF SERVICE</u>

I certify that I am over the age of 18 and not a party to this action. I further certify that I served a true and correct copies of the Summons in an Adversary Proceeding and the Complaint Objecting to Debtor's Discharge Under 11 U.S.C. § 727 and Complaint To Determine The Dischargeability Of Certain Debts Under 11 U.S.C. §523 upon the below named parties by depositing same in the United States Mail with sufficient postage thereon, addressed as follows:

Robert Storm
94 Rosehill Court
St. Augustine, Florida 32092

Jason L. Pettie, Esq.
Trustee
Taylor English Duma
Suite 200
1600 Parkwood Circle SE
Atlanta, GA 30339

Michael D. Robl, Esq.
Robl Law Group LLC
Suite 250
3754 LaVista Road
Tucker, GA 30084

Under penalty of perjury, I declare that the foregoing is true and correct.

Respectfully submitted, this the 27th day of October, 2023.

/s/ Jon A. Gottlieb
Jon A. Gottlieb, Esq.
Georgia Bar No. 303060
Attorneys for Plaintiff Mashala Investments, LLC

**FLYNN & GOTTLIEB, P.A.**
800 Johnson Ferry Road, N.E.
Atlanta, Georgia 30342-1417
(404) 497-8000 Telephone
(404) 497-8009 FAX
jong@lawfg.com

{00244211 3 }