**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE:

ROBERT STORM,

     Debtor.

CASE NO. 23-55028-LRC

Chapter 7

**NOTICE OF MOTION TO APPROVE COMPROMISE AGREEMENT,
<u>DEADLINE TO OBJECT, AND HEARING</u>**

Debtor / Defendant Robert Storm has filed a *Motion to Approve Compromise Agreement* (the "Motion") on April 27, 2026. Pursuant to the Fifth Amended and Restated General Order No. 24-2018, the Court may consider this matter without further notice or a hearing if no party in interest files a response or objection within twenty-one (21) days from the date of service of this notice. **If you object to the relief requested in this pleading, you must timely file your objection with the Bankruptcy Clerk** at United States Bankruptcy Court, Room 1340, 75 Ted Turner Drive SW, Atlanta, Georgia 30303, and serve a copy on the movant's attorney, Maxwell W. Bowen, Robl & Bowen, LLC, 3754 Lavista Road, Suite 250, Tucker, Georgia 30084, and any other appropriate persons by the objection deadline. The response or objection must explain your position and be actually received by the Bankruptcy Clerk within the required time.

A hearing on the Motion has been scheduled for **June 10, 2026** at **9:45 AM**, which will be held in Courtroom 1204, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, Georgia 30303, which must be attended in person, unless the Court orders otherwise.

If an objection or response is timely filed and served, the hearing will proceed as scheduled. **If you do not file a response or objection within the time permitted, the Court may grant the relief requested without further notice and without holding the scheduled hearing** provided that an order approving the relief requested is entered at least one business day prior to the scheduled hearing. If no objection is timely filed, but no order is entered granting the relief requested at least one business day prior to the scheduled hearing, the hearing will be held as scheduled.

     <u>**Your rights may be affected**</u>. **You should read these papers carefully and discuss them with your attorney, if you have one inf this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

This 27th day of April, 2026.

ROBL & BOWEN, LLC

*/s/ Maxwell W. Bowen*

1

Michael D. Robl
Georgia Bar No. 610905
Maxwell W. Bowen
Georgia Bar No. 719784

3754 Lavista Road, Suite 250
Tucker, Georgia 30084
(404) 373-5153 (telephone)
(404) 537-1761 (facsimile)
michael@roblgroup.com
max@roblgroup.com
*Counsel for Debtor / Defendant*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:

ROBERT STORM,

     Debtor.

CASE NO. 23-55028-LRC

Chapter 7

## MOTION TO APPROVE COMPROMISE AGREEMENT

Debtor Robert Storm ("Mr. Storm"), by and through his undersigned counsel, submits this *Motion to Approve Compromise Agreement* (the "Motion") between Mr. Storm and Mashala Investments, LLC ("Mashala"), respectfully showing the Court as follows:

### JURISDICTION AND BASIS FOR RELIEF

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. The subject matter of this Motion constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (I), (J) & (O).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein is 11 U.S.C. § 105 and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### BACKGROUND FACTS

**Pre-Petition**

4. Mr. Storm is the owner and manager of BinaNat Capital, LLC ("BinaNat").

5. BinaNat was a hard money lender for real estate loans to third parties.

6. Each hard money loan was secured by real property.

7. The funds for these hard money loans were, primarily, made by investors such as Mashala.

8. As part of the investments in BinaNat, Mr. Storm, BinaNat, and the investors, such as

1

Mashala, signed a *Servicing Agreement*.

9. The *Servicing Agreement* appointed BinaNat as servicer for the loan funded by the investments and obligated BinaNat to make monthly payments to the investors.

10. Mr. Storm served as a guarantor under each *Servicing Agreement*, and he guaranteed both the financial obligations of BinaNat and the actual performance of BinaNat under the *Servicing Agreement*.

11. In total, between 2009 through 2019 Mashala invested the principal amount of $704,250.00, documented by written servicing agreements executed by Mr. Storm, Mashala, and BinaNat.

12. In some instances BinaNat and Storm failed to make hard money loans utilizing money Mashala invested with BinaNat without informing Mashala.

13. In some instances BinaNat and Storm failed to secure Mashala's investment by failing to assign BinaNat's security interest in the collateral securing the hard money loans without informing Mashala.

14. As a result of such failures, the Fulton County Superior Court, in CAFN 2022CV363021, granted summary judgment against BinaNat, Storm and Sindre, LLC in favor of Mashala in the amount of $845,863.40, reserving an election of remedy, by order entered February 24, 2023, and granted Mashala's election of remedy by entering judgment on March 2, 2023 against BinaNat and Storm for fraud in the amount of $845,863.40.

<b>Mr. Storm's Bankruptcy</b>

15. On May 31, 2023, Mr. Storm was placed into the above-captioned involuntary chapter 7 bankruptcy in this Court by creditors other than Mashala.

16. On July 14, 2023, this Court entered an *Order for Relief in Involuntary Case*.

2

17. On October 27, 2023, Mashala brought an adversary proceeding against Mr. Storm, Adv. Proc. Case No. 23-05175, seeking to deny Mr. Storm's discharge pursuant to 11 U.S.C. § 727(a)(4)(C) and the dischargeability of Mashala's debt pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(4) (the "Adversary Proceeding").

18. Mr. Storm sought to dismiss all of Mashala's claims.

19. The Court dismissed Mashala's claim under section 727(a)(4)(C) but did not dismiss Mashala's section 523(a) claims.

20. Mr. Storm and Mashala have engaged in extensive settlement discussions regarding the claims asserted by Mashala and have reached a settlement of Mashala's claims.

### SETTLEMENT TERMS

21. The settlement for which Court approval is sought in this Motion involves the following essential terms:[1]

    a. Mr. Storm shall give Mashala a nondischargeable consent judgment in the principal amount of $845,863.40 (the "Consent Judgment"), which is attached hereto as **Exhibit "A"**;

    b. The Consent Judgment shall only be collectible up to $718,983.89 ***unless*** Mr. Storm's discharge is denied, in which case Mashala shall be entitled to collect the full amount of the Consent Judgment;

    c. Mr. Storm shall receive credit towards the balance of the Consent Judgment for the payment of $268,078.50 that Mashala received on or about May 25, 2023 from Sindre, LLC (the "Sindre Payment"), making the initial collectible balance

---

[1] Capitalized terms not otherwise defined in this Motion shall have the meanings given to them in the *Settlement Agreement* attached to this Motion.

$450,905.39;

d.  If Mashala is required to pay any of the Sindre Payment to the Chapter 7 Trustee of BinaNat Capital, LLC, then the collectible amount of the Consent Judgment shall be increased by the amount paid by Mashala to BinaNat's Chapter 7 Trustee;

e.  Mr. Storm agrees not to contest the domestication of the Consent Judgment;

f.  Mr. Storm retains the right to assert any exemptions available to him under relevant law, including tenancy by the entireties, as to the Consent Judgment;

g.  Mashala agrees that it will not take collection action on the Consent Judgment for eighteen (18) months from the earlier of:

 i.  Mr. Storm receiving a discharge in his above-captioned bankruptcy case; or

 ii.  Mr. Storm's bankruptcy case being dismissed;

h.  At the conclusion of this 18-month period, Mashala is not restricted from taking collection actions;

i.  In the event another judgment is able to be collected before the described 18-month period expires, or this bankruptcy case dismissed prior to Mr. Storm receiving a discharge, or Mr. Storm is denied an overall discharge in this bankruptcy case, Mashala shall be entitled to immediately take any collection actions, subject to the other terms of the settlement agreement;

j.  Mashala shall be responsible for determining when another judgment is rendered against Mr. Storm, ***provided however***, Mr. Storm shall provide such information in good faith and otherwise promptly upon request made through his attorneys; and

k.  Mashala agrees that it will not take collection efforts as to Mr. Storm's 2022 Chevrolet Silverado, which was previously abandoned by Mr. Storm's chapter 7

4

bankruptcy trustee.

22.     The *Settlement Agreement* (the "Agreement") is attached hereto as **Exhibit "B,"** the provisions of which are incorporated herein by reference as if set out fully in this Motion. To the extent the foregoing description of the terms of the Agreement, or any portion of this Motion, makes any statements contrary to, or omits portions of, any provisions in the Agreement, the actual terms of the Agreement shall be binding on Mr. Storm and Mashala and shall control over any abbreviated, omitted, misstated, or other representations in this Motion. All creditors and other parties in interest are directed to the accompanying Agreement filed with this Motion.

23.     Mr. Storm believes that the compromise and settlement, as described in brief form above and more fully set forth in the accompanying Agreement, is in the best interest of Mr. Storm and Mr. Storm's creditors for the following reasons.

**ARGUMENT AND CITATION OF AUTHORITIES**

Mr. Storm and Mashala have evaluated the strengths and weaknesses of their respective claims, and of their defenses or responses to one another's claims, and more particularly their ability to prosecute claims and to defend claims by and against one another, and the associated delays and expense of such legal proceedings, based on the particular facts at hand. Based on their evaluation of those facts, claims, defenses, and practical circumstances, Mr. Storm and Mashala seek to settle and resolve in full all disputes and claims at issue in order to avoid the expenses and uncertainty of outcomes associated with litigating such claims and collecting on any related judgments, and the inherent delays that such litigation would cause, and to receive certain monetary consideration, without admitting liability or damages in the Adversary Proceeding, but acknowledging the Pre-Petition Background Facts.

**I.      The Settlement and Compromise should be Approved under Rule 9019.**

5

**A.      Legal standard for evaluating approval of the compromise agreement.**

Federal Rule of Bankruptcy Procedure 9019 provides that the Court may approve a compromise and settlement after notice and hearing. The approval or rejection of a compromise and settlement is left to the sound discretion of the Bankruptcy Court and is governed by the particular circumstances of each case. *In re Tidewater Group, Inc.*, 13 B.R. 764, 765 (Bankr. N.D. Ga. 1981). In exercising its discretion, a Bankruptcy Court should give due regard to what is equitable under particular circumstances and under applicable law. Furthermore, in evaluating any settlement, the court must consider that the "law favors compromise." *Port O'Call Investment Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976).

Courts have relied on a number of factors in determining whether to approve a compromise and settlement under Federal Rule of Bankruptcy Procedure 9019. These factors, as set forth by the Eleventh Circuit Court of Appeals, include the following:  (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and (d) the paramount interests of the creditors and the proper deference to their reasonable views. *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990). Those four factors are sometimes referred to as the "Justice Oaks factors."

The Court should not rubber stamp a debtor's settlement proposal or a trustee's settlement proposal. "However, the court should not conduct a 'mini-trial' on the merits of the underlying litigation either." *In re Greenberg*, 2005 WL 6746610, at *3 (Bankr. S.D. Ga. Apr. 5, 2005) (citing *In re Mattive,* 1995 WL 17005058, at *2 (Bankr. S.D. Ga. April 26, 1995) (*citing Nellis v. Shugrue,* 165 B.R. 115, 122 (S.D.N.Y. 1994)).

Rather, when considering the *Justice Oaks* factors, a bankruptcy court is to inquire into

6

whether the proposed settlement "falls below the lowest point of the range of reasonableness." *In re Greenberg*, 2005 WL 6746610, at \*3 (Bankr. S.D. Ga. Apr. 5, 2005) (quoting *Cames v. Joiner (In re Joiner))*, 319 B.R. 903, 907 (Bankr. M.D. Ga. 2004) (Walker, J.) (*citing In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723, 758 (Bankr. S.D.N.Y. 1992)).

Mr. Storm submits that the settlement proposed herein falls within the "range of reasonableness" based on the *Justice Oaks* factors for the following reasons.

**B.      Application of the "Justice Oaks factors" to the Facts at Hand Supports Approval of the Proposed Settlement.**

The Settlement Agreement should be approved under the above-stated standards, for the following reasons:

**i.      *The probability of success in the litigation.***

The first *Justice Oaks* factor to consider is the probability of success in the litigation being resolved. Mr. Storm is a defendant in the Adversary Proceeding, which is only one of the claims resolved by the settlement.

Mr. Storm submits that he should prevail in the Adversary Proceeding, Mashala's section 523(a) claims would fail because Mashala's would not be able to make the requisite factual showings to support their claims through discovery.

On the other hand, Mashala would contend exactly as it did in its complaint; that Mr. Storm defrauded it over the course of several transactions and knowingly and intentionally concealed his fraud. Mashala would likely point to the numerous other adversary proceedings against Mr. Storm making similar claims and seek in discovery to develop evidence that would more strongly support their claims.

At this early stage of the litigation, it is difficult to determine the final outcome of the litigation. While Mr. Storm believes he will prevail in this Adversary Proceeding if it is not

7

resolved through settlement, the settlement saves both Mr. Storm and Mashala tens of thousands of dollars in attorneys' fees they could otherwise avoid incurring and provides the parties with certainty as opposed to an uncertain outcome.

### ii. *The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it.*

The next *Justice Oaks* factor to consider is how complex the litigation being resolved is, and the related expenses and delays from that litigation. If litigated, the disputes between Mr. Storm and Mashala would be time-consuming and expensive.

The Adversary Proceeding is still in its early stages. Discovery still needs to be taken, and Mr. Storm anticipates extensive discovery from Mashala. There would still be significant time before this matter resolved, including completing discovery, likely motions for summary judgment, and a trial. By resolving this Adversary Proceeding at this early stage, the parties avoid incurring such expense.

### iii. *The paramount interest of the creditors and a proper deference to their reasonable views.*

The next *Justice Oaks* factor to consider is whether creditors benefit from the settlement. Obviously, Mashala benefits from this settlement. Given the large number of creditors still involved in Mr. Storm's bankruptcy, including the numerous adversary proceedings filed, Mr. Storm submits that this factor is neutral in analyzing whether a settlement with Mashala is appropriate.

### iv. *The difficulties, if any, to be encountered in the matter of collection.*

The next *Justice Oaks* factor to consider is whether the debtor would have difficulty collecting if it prevailed in an action being compromised. This typically arises when a debtor or trustee pursues a preferential transfer claim, fraudulent transfer claim, action to recover post-

petition transfer, or similar matter.

Because Mr. Storm is not pursuing an affirmative claim in the Adversary Proceeding, this factor is not at issue in the way that it would be if Mr. Storm were compromising an adversary proceeding, such as for recovery of a preferential payment. For that reason, Mr. Storm submits that this factor is neutral in evaluating approval of settlement.

**C.      Practical and logistical considerations support settlement and compromise.**

There are substantial, practical and logistical consideration that support settlement and compromise. If the proposed settlement and compromise is not approved, the litigation between Mr. Storm and Mashala would continue in the Adversary Proceeding. As explained, because this case is in its early stages, there would be a significant amount of time before a final resolution of this case. In turn, that would delay the conclusion of Mr. Storm's bankruptcy case as a whole.

Additionally, by reducing Mr. Storm's commitments through resolving the Adversary Proceeding, Mr. Storm is able to focus on his remaining adversary proceedings. In the event deadlines for discovery would overlap, delays could occur in those other cases as Mr. Storm attempts to handle them. Accordingly, by resolving the Adversary Proceeding, Mr. Storm's attention can be focused on his remaining adversary proceedings.

**II.      No admission of liability or damages if settlement and compromise is not approved.**

As stated in the Settlement Agreement, the parties are not admitting any liability asserted in the Adversary Proceeding by settling their disputes. Rather, the settlement is a negotiated resolution of business disputes that is in the best interest of all due to costs, delays, and uncertainties attendant to continued litigation.

The submission of this Motion and the representations made in this Motion are not admissions of any fault, liability, wrongful acts or omissions by Mr. Storm or Mashala.

9

Similarly, the submission of this Motion and the representations made in this Motion are not admissions that any damages are owed by Mr. Storm, or that any specific amount of damages are owed by Mr. Storm or any affiliated individual or entity.

This Motion is made in a good faith effort to compromise disputed claims and for the parties to buy peace without further expense, time, and difficulties.

In the event that this Motion is not approved by the Court, nothing contained herein shall be deemed an admission or statement contrary to Mr. Storm's interests, or Mashala's interests, in any future legal proceeding.

WHEREFORE, Mr. Storm respectfully requests that this Court enter an Order:

(i)     Granting this Motion;

(ii)    Approving the compromise reflected in the Agreement, authorizing Mr. Storm to execute and perform the terms of the compromise, including signing the Agreement, and effectuating the various items thereunder; and

(iii)   Providing such other and further relief as the Court deems proper and just.

This 27th day of April, 2026.

Respectfully submitted,

ROBL & BOWEN, LLC

/s/ Maxwell W. Bowen
Michael D. Robl
Georgia Bar No. 610905
Maxwell W. Bowen
Georgia Bar No. 719784

3754 Lavista Road, Suite 250
Tucker, Georgia 30084
(404) 373-5153 (telephone)
(404) 537-1761 (facsimile)
michael@roblgroup.com
max@roblgroup.com
*Counsel for Debtor / Defendant*

10

# EXHIBIT A

# EXHIBIT B