**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>ROBERT STORM,<br><br>Debtor. | CASE NO. 23-55028-LRC<br><br>Chapter 7 |

**NOTICE OF MOTION TO APPROVE COMPROMISE AGREEMENT,**
**DEADLINE TO OBJECT, AND HEARING**

Debtor / Defendant Robert Storm has filed a *Motion to Approve Compromise Agreement* (the "Motion") on August 24, 2026. Pursuant to Fifth Amended and Restated General Order No. 24-2018, the Court may consider this matter without further notice or a hearing if no party in interest files a response or objection within twenty-four (24) days from the date of service of this notice. **If you object to the relief requested in this pleading, you must timely file your objection with the Bankruptcy Clerk** at United States Bankruptcy Court, Room 1340, 75 Ted Turner Drive SW, Atlanta, Georgia 30303, and serve a copy on the movant's attorney, Michael D. Robl, Robl Law Group, LLC, 3754 Lavista Road, Suite 250, Tucker, Georgia 30084, and any other appropriate persons by the objection deadline. The response or objection must explain your position and be actually received by the Bankruptcy Clerk within the required time.

A hearing on the Motion has been scheduled for **September 30, 2026** at **10:30 AM**, which will be held in Courtroom 1204, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, Georgia 30303, which must be attended in person unless the Court orders otherwise.

If an objection or response is timely filed and served, the hearing will proceed as scheduled. **If you do not file a response or objection within the time permitted, the Court may grant the relief requested without further notice and without holding the scheduled hearing** provided that an order approving the relief requested is entered at least one business day prior to the scheduled hearing. If no objection is timely filed, but no order is entered granting the relief requested at least one business day prior to the scheduled hearing, the hearing will be held as scheduled.

**Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

This 25th day of August, 2026.

ROBL & BOWEN, LLC

*/s/ Maxwell W. Bowen*

Michael D. Robl
Georgia Bar No. 610905
Maxwell W. Bowen
Georgia Bar No. 719784

3754 Lavista Road, Suite 250
Tucker, Georgia 30084
(404) 373-5153 (telephone)
(404) 537-1761 (facsimile)
michael@roblgroup.com
max@roblgroup.com
*Counsel for Debtor / Defendant*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>ROBERT STORM,<br><br>Debtor. | CASE NO. 23-55028-LRC<br><br>Chapter 7 |

**MOTION TO APPROVE COMPROMISE AGREEMENT**

Debtor Robert Storm ("Mr. Storm"), by and through his undersigned counsel, submits this *Motion to Approve Compromise Agreement* (the "Motion") between Mr. Storm and Kathleen Steil in her capacity as Chapter 7 Trustee for the Estate of Binanat Capital, LLC, Case No. 23-55019-LRC, (the "Trustee"), respectfully showing the Court as follows:

**JURISDICTION AND BASIS FOR RELIEF**

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. The subject matter of this Motion constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (I), (J) & (O).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein is 11 U.S.C. § 105 and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND FACTS**

**Mr. Storm's Bankruptcy**

4. On May 31, 2023, Mr. Storm was placed into the above-captioned involuntary chapter 7 bankruptcy in this Court by creditors other than the Trustee.

5. On July 14, 2023, this Court entered an *Order for Relief in Involuntary Case*.

6. On April 1, 2024, the Trustee filed a Proof of Claim in Mr. Storm's bankruptcy case in an

unknown amount.

**BinaNat Bankruptcy**

7. Mr. Storm is the sole owner and manager of BinaNat Capital, LLC ("BinaNat").

8. On May 31, 2023, an *Involuntary Petition* for Chapter 7 Bankruptcy relief was filed by BinaNat's creditors, initiating Bankruptcy Case No. 23-55019-LRC (the "BinaNat Bankruptcy").

9. On September 22, 2023, the *Order for Relief in Involuntary Case* was entered in the BinaNat Bankruptcy.

10. On September 29, 2023, the Trustee was appointed as the interim Chapter 7 Trustee for BinaNat's bankruptcy estate.

11. On December 8, 2023, the 11 U.S.C. § 341 meeting of creditors in the BinaNat Bankruptcy was held and concluded and the Trustee became the acting trustee in the BinaNat Bankruptcy.

12. On September 17, 2025, the trustee in Mr. Storm's bankruptcy filed a *Trustee's Notice of Abandonment of Property* (Doc. No. 193), which included abandoning Mr. Storm's interests in various business entities.

13. On December 4, 2025, this Court overruled an objection to the *Trustee's Notice of Abandonment*, rendering those assets abandoned and re-vested in Mr. Storm.

14. On July 15, 2026, the trustee in Mr. Storm's bankruptcy entered a report of no distribution.

**Events in the Storm Bankruptcy and the BinaNat Bankruptcy**

15. On June 4, 2024, the Trustee and the Chapter 7 trustee in Mr. Storm's bankruptcy, Jason Pettie, filed their *Chapter 7 Trustees' Joint Emergency Motion for Authorization to Release Liens and Hold Sale Proceeds Subject to Future Bankruptcy Court Order* (the "Trustees' Joint Motion") in the BinaNat Bankruptcy and in Mr. Storm's bankruptcy.

16. The Trustees' Joint Motion requested that the Trustee be authorized to retain proceeds from the sale of certain lots located in the Hunts Mill subdivision in Griffin, Georgia by entities owned by Mr. Storm.

17. Mr. Storm asserted that he may have an interest in the funds from these properties through entities he owned, Arinat Holdings, LLC, Sindre, LLC, and PV Capital, LLC (the "Storm Entities").

18. On June 14, 2024, the Court entered orders in the BinaNat Bankruptcy and Mr. Storm's bankruptcy granting the Trustees' Joint Motion and authorizing the Trustee to hold the sale proceeds, subject to future order of the Court.

19. The Trustee is holding a net total of $202,964.79 (the "Sale Proceeds").

**The Trustee's Adversary Proceeding**

20. On September 19, 2025, the Trustee initiated an adversary proceeding (Case No. 25-05172-LRC, the "Adversary Proceeding") against the Storm Entities for the receipt of allegedly preferential and / or fraudulent conveyances and that Mr. Storm and the Storm Entities did not have a lien upon the funds held by the Trustee.

21. Mr. Storm and the Trustee have engaged in extensive settlement discussions regarding the claims asserted by the Trustee and have reached a settlement of the Trustee's claims.

**SETTLEMENT TERMS**

22. The settlement for which Court approval is sought in this Motion involves the following essential terms:[1]

[1] Capitalized terms not otherwise defined in this Motion shall have the meanings given to them in the *Settlement Agreement* attached to this Motion.

a. Mr. Storm and the Storm Entities do not and will not assert any claim(s), liens upon, and / or interest in any of the Sale Proceeds or any other funds collected by the Trustee in the BinaNat Bankruptcy;

b. Mr. Storm and the Storm Entities, including Mr. Storm in his limited capacity as principal of the Storm Entities, withdraw and release their opposition to the Trustees' Joint Motion;

c. Mr. Storm and the Storm Entities, including Mr. Storm in his limited capacity as principal of the Storm Entities, are not entitled to any distribution in the BinaNat Bankruptcy, including as a general unsecured creditor;

d. Mr. Storm and the Storm entities, including Mr. Storm in his limited capacity as principal of the Storm Entities, waive their rights to file any proof of claim in the BinaNat Bankruptcy; and

e. Within thirty (30) business days after court approval of the settlement agreement, Mr. Storm, the Storm Entities, and the Trustee, shall execute a Stipulation of Dismissal with prejudice of the Adversary Proceeding.

23. The *Settlement Agreement* (the "Agreement") is attached hereto as **Exhibit "A,"** the provisions of which are incorporated herein by reference as if set out fully in this Motion. To the extent the foregoing description of the terms of the Agreement, or any portion of this Motion, makes any statements contrary to, or omits portions of, any provisions in the Agreement, the actual terms of the Agreement shall be binding on Mr. Storm and the Trustee and shall control over any abbreviated, omitted, misstated, or other representations in this Motion. All creditors and other parties in interest are directed to the accompanying Agreement filed with this Motion.

24. Mr. Storm believes that the compromise and settlement, as described in brief form above

and more fully set forth in the accompanying Agreement, is in the best interest of Mr. Storm and Mr. Storm's creditors for the following reasons.

**ARGUMENT AND CITATION OF AUTHORITIES**

Mr. Storm and the Trustee have evaluated the strengths and weaknesses of their respective claims, and of their defenses or responses to one another's claims, and more particularly their ability to prosecute claims and to defend claims by and against one another, and the associated delays and expense of such legal proceedings, based on the particular facts at hand. Based on their evaluation of those facts, claims, defenses, and practical circumstances, Mr. Storm and the Trustee seek to settle and resolve in full all disputes and claims at issue in order to avoid the expenses and uncertainty of outcomes associated with litigating such claims and collecting on any related judgments, and the inherent delays that such litigation would cause, and to receive certain monetary consideration, without admitting liability or damages.

**I. The Settlement and Compromise should be Approved under Rule 9019.**

**A. Legal standard for evaluating approval of the compromise agreement.**

Federal Rule of Bankruptcy Procedure 9019 provides that the Court may approve a compromise and settlement after notice and hearing. The approval or rejection of a compromise and settlement is left to the sound discretion of the Bankruptcy Court and is governed by the particular circumstances of each case. *In re Tidewater Group, Inc.*, 13 B.R. 764, 765 (Bankr. N.D. Ga. 1981). In exercising its discretion, a Bankruptcy Court should give due regard to what is equitable under particular circumstances and under applicable law. Furthermore, in evaluating any settlement, the court must consider that the "law favors compromise." *Port O'Call Investment Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976).

Courts have relied on a number of factors in determining whether to approve a compromise and settlement under Federal Rule of Bankruptcy Procedure 9019. These factors, as set forth by the Eleventh Circuit Court of Appeals, include the following: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and (d) the paramount interests of the creditors and the proper deference to their reasonable views. *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990). Those four factors are sometimes referred to as the "Justice Oaks factors."

The Court should not rubber stamp a debtor's settlement proposal or a trustee's settlement proposal. "However, the court should not conduct a 'mini-trial' on the merits of the underlying litigation either." *In re Greenberg*, 2005 WL 6746610, at *3 (Bankr. S.D. Ga. Apr. 5, 2005) (citing *In re Mattive,* 1995 WL 17005058, at *2 (Bankr. S.D. Ga. April 26, 1995)).

Rather, when considering the *Justice Oaks* factors, a bankruptcy court is to inquire into whether the proposed settlement "falls below the lowest point of the range of reasonableness." *In re Greenberg*, 2005 WL 6746610, at *3 (Bankr. S.D. Ga. Apr. 5, 2005) (quoting *Cames v. Joiner (In re Joiner)*, 319 B.R. 903, 907 (Bankr. M.D. Ga. 2004) (Walker, J.) (*citing In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723, 758 (Bankr. S.D.N.Y. 1992)).

Mr. Storm submits that the settlement proposed herein falls within the "range of reasonableness" based on the *Justice Oaks* factors for the following reasons.

**B. Application of the "Justice Oaks factors" to the Facts at Hand Supports Approval of the Proposed Settlement.**

The Settlement Agreement should be approved under the above-stated standards, for the following reasons:

**i. *The probability of success in the litigation.***

The first *Justice Oaks* factor to consider is the probability of success in the litigation being resolved. While Mr. Storm is not a defendant in the Adversary Proceeding, that litigation threatens to embroil Mr. Storm in several more years of litigation as a representative of the Storm Entities and possibly expand further to involve Mr. Storm, given the nature of the matters the Adversary Proceeding seeks to resolve.

While the Storm Entities and the Trustee submit that they should prevail in the Adversary Proceeding, both recognize that the Adversary Proceeding is in its early stages. The Storm Entities have not filed an answer and affirmative defenses, as the matter is being resolved. Given the facts as asserted in the Adversary Proceeding, and as explained in the Agreement, there was risk that Mr. Storm would be made a party to the Adversary Proceeding. The Settlement alleviates that risk.

**ii.** ***The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it.***

The next *Justice Oaks* factor to consider is how complex the litigation being resolved is, and the related expenses and delays from that litigation. If litigated, the disputes between Mr. Storm and the Trustee would be time-consuming and expensive.

The adversary proceeding is still in its early stages. Discovery still needs to be taken, and Mr. Storm anticipates extensive discovery from the Trustee. There would still be significant time before this matter resolved, including completing discovery, likely motions for summary judgment, and a trial. By resolving this adversary proceeding at this early stage, the parties avoid incurring such expense.

**iii.** ***The paramount interest of the creditors and a proper deference to their reasonable views.***

The next *Justice Oaks* factor to consider is whether creditors benefit from the settlement. Obviously, BinaNat's estate, and therefore the Trustee, benefit from this settlement. Given that a

report of no distribution has been entered in Mr. Storm's bankruptcy, Mr. Storm submits that this factor is neutral in analyzing whether a settlement with the Trustee is appropriate, since the claims involved would no longer provide value to those creditors if Mr. Storm was successful and was entitled to some portion of the Sale Proceeds.

**iv.** ***The difficulties, if any, to be encountered in the matter of collection.***

The next *Justice Oaks* factor to consider is whether the debtor would have difficulty collecting if it prevailed in an action being compromised. This typically arises when a debtor or trustee pursues a preferential transfer claim, fraudulent transfer claim, action to recover post-petition transfer, or similar matter. Because Mr. Storm is not pursuing an affirmative claim in this adversary proceeding, this factor is not at issue in the way that it would be if Mr. Storm were compromising certain claims, such as for recovery of a preferential payment. For that reason, Mr. Storm submits that this factor is neutral in evaluating approval of settlement.

**C. Practical and logistical considerations support settlement and compromise.**

There are substantial, practical and logistical consideration that support settlement and compromise. If the proposed settlement and compromise is not approved, the litigation between Mr. Storm and the Trustee would continue in the Adversary Proceeding. As explained, because this case is in its early stages, there would be a significant amount of time before a final resolution of this case.

**II. No admission of liability or damages if settlement and compromise is not approved.**

As stated in the Settlement Agreement, the parties are not admitting any liability by settling their disputes. Rather, the settlement is a negotiated resolution of business disputes that is in the best interest of all due to costs, delays, and uncertainties attendant to continued litigation.

The submission of this Motion and the representations made in this Motion are not

admissions of any fault, liability, wrongful acts or omissions by Mr. Storm or the Trustee.

Similarly, the submission of this Motion and the representations made in this Motion are not admissions that any damages are owed by Mr. Storm, or that any specific amount of damages are owed by Mr. Storm or any affiliated individual or entity.

This Motion is made in a good faith effort to compromise disputed claims and for the parties to buy peace without further expense, time, and difficulties.

In the event that this Motion is not approved by the Court, nothing contained herein shall be deemed an admission or statement contrary to Mr. Storm's interests, or the Trustee' interests, in any future legal proceeding.

WHEREFORE, Mr. Storm respectfully requests that this Court enter an Order:

(i) Granting this Motion;

(ii) Approving the compromise reflected in the Agreement, authorizing Mr. Storm to execute and perform the terms of the compromise and effectuating the various items thereunder; and

(iii) Providing such other and further relief as the Court deems proper and just.

This 25th day of August, 2026.

Respectfully submitted,

ROBL & BOWEN, LLC

*/s/ Maxwell W. Bowen*
Michael D. Robl
Georgia Bar No. 610905
Maxwell W. Bowen
Georgia Bar No. 719784

3754 Lavista Road, Suite 250
Tucker, Georgia 30084
(404) 373-5153 (telephone)
(404) 537-1761 (facsimile)
michael@roblgroup.com

max@roblgroup.com
*Counsel for Debtor / Defendant*

# EXHIBIT A

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

**THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE** (the "**Agreement**") is made and entered into as of the date the Agreement is fully executed, by and between Kathleen Steil in her capacity as Chapter 7 Trustee for the Estate of Binanat Capital, LLC, Case No. 23-55019-LRC (the "**Trustee**" and/or "**Plaintiff**") and Arinat Holdings, LLC ("**Arinat**"), Sindre, LLC ("**Sindre**"), PV Capital, LLC ("**PVC**")(collectively referred to as the "**Storm Defendants**") and with Robret Storm ("**Mr. Storm**") in a limited capacity.

## RECITALS

**WHEREAS**, the Involuntary Petition for Chapter 7 Bankruptcy relief was filed by several creditors of Binanat Capital, LLC (the "**Debtor**" and/or "**Binanat**") on or about May 31, 2023, thereby initiating Bankruptcy Case No. 23-55019-LRC (the "**Binanat Bankruptcy Case**")(Docket No. 1).

**WHEREAS**, the *Order for Relief in Involuntary Case* ("**Order for Relief**") was entered on September 22, 2023 in the Binanat Bankruptcy Case (Docket No. 38);

**WHEREAS**, *Notice of Appointment* of Kathleen Steil as the Interim Chapter 7 Trustee for the Bankruptcy Estate of Binanat Capital, LLC was entered on September 29, 2023 (Docket No. 44) and the 11 U.S.C. §341 Meeting of creditors was concluded on December 8, 2023;

**WHEREAS,** the Trustee is the duly appointed and acting Trustee for the Debtor's Chapter 7 Bankruptcy Estate (the "**Estate**") in the Binanat Bankruptcy Case;

**WHEREAS**, The Involuntary Petition for Chapter 7 Bankruptcy Relief was filed by several creditors of Mr. Storm on or about May 31, 2023, thereby initiating Bankruptcy Case No. 23-55028-LRC (the "**Storm Bankruptcy Case**") (Storm Bankruptcy; Docket No. 1).

**WHEREAS,** the *Order for Relief in Involuntary Case* ("**Storm Order for Relief**") was entered on July 14, 2023 in the Storm Bankruptcy Case (Storm Bankruptcy; Docket No. 16).

**WHEREAS**, *Notice of Appointment* of Jason Pettie as the Interim Chapter 7 Trustee for the Estate of Robert Storm was entered on July 18, 2023 ("**Storm Trustee**")(Storm Bankruptcy; Docket No. 18) and the 11 U.S.C. §341 Meeting of creditors was concluded on September 14, 2023.

**WHEREAS**, Binanat Capital, LLC was operated and managed by its principal and sole member Mr. Storm;

**WHEREAS**, as of the date of filing of the Involuntary Petition in the Storm Bankruptcy Case, Mr. Storm held a one hundred percent (100%) ownership interest in the Storm Defendants.

**WHEREAS**, on June 4, 2024 the Trustee and Storm Trustee filed their *Chapter 7 Trustees' Joint Emergency Motion for Authorization to Release Liens and Hold Sale Proceeds Subject to*

*Future Bankruptcy Court Order* ("**Trustees' Joint Motion**") in both the Binanat Bankruptcy Case (Docket No. 93) and Storm Bankruptcy Case (Storm Bankruptcy, Docket No. 134), requesting authorization for the Trustee to retain proceeds from the sale of certain lots located in the Hunts Mill subdivision in Griffin, Georgia by Arinat and Sindre subject to future Bankruptcy Court Order.

**WHEREAS**, the Storm Defendants Arinat and Sindre, including Mr. Storm as principal of Arinat and Sindre, asserted certain defenses to the Trustees' Joint Motion;

**WHEREAS**, upon information and belief the Storm Trustee was investigating Mr. Storm's interest in the Storm Defendants.

**WHEREAS**, on June 14, 2024, the Bankruptcy Court entered the *Order Granting Chapter 7 Trustees' Joint Emergency Motion for Authorization to Release Liens and Hold Sale Proceeds Subject to Future Bankruptcy Court Order* (Docket No. 101) in the Binanat Bankruptcy Case.

**WHEREAS**, on 14, 2024, the Bankruptcy Court entered the *Order Granting Chapter 7 Trustees' Joint Emergency Motion for Authorization to Release Liens and Hold Sale Proceeds Subject to Future Bankruptcy Court Order* (Storm Bankruptcy, Docket No. 139) in the Storm Bankruptcy Case.

**WHEREAS**, on or about September 19, 2025, the Trustee filed an adversary proceeding against several Defendants, including the Storm Defendants, which adversary proceeding was docketed and remains pending in the Bankruptcy Court as Adversary Proceeding No. 25-05172-LRC (the "**Litigation**") (Adv. Docket No. 1). In the Litigation the Trustee demanded, *inter alia*, that the storm Defendants were recipients of preferential and/or fraudulent conveyances and that they do not have a claim to or lien upon the following (Capitalized terms defined below): the Total Funds, the Horizon Funds, Arinat Proceeds, Sindre Net Proceeds and Broad Street Proceeds.

**WHEREAS**, as set forth in the Litigation the Trustee is currently holding the net proceeds from the sale of Hunts Mill Lots 12, 13 and 14 in the amount of $85,483.60 ("**Sindre Net Proceeds**")

**WHEREAS**, as set forth in the Litigation the Trustee is currently holding the net proceeds from the sale of Hunts Mill Lots 3, 8, 22 and 25 in the amount of $117,481.19 ("**Arinat Proceeds**").

**WHEREAS**, on September 17, 2025, the Storm Trustee filed his Trustee's Notice of Abandonment of Property including the Debtor's interest in the Storm Defendants (the "**Storm Abandonment**") (Storm Bankruptcy, Docket No. 193).

**WHEREAS**, on December 4, 2025, the Bankruptcy Court overruled an objection to the Storm Abandonment (Storm Bankruptcy, Docket No. 214). Upon information and belief, the Storm Defendants are ordered abandoned.

**WHEREAS,** the Trustee filed the placeholder Proof of Claim No. 59-1 in an unknown amount in the Storm Bankruptcy Case while she conducted her statutory investigation. The Trustee does not anticipate a distribution in the Storm Bankruptcy Case. Mr. Storm is not listed as an individual Defendant in the Litigation.

**WHEREAS** the Storm Defendants deny liability and asserted defenses to the claims set forth in the Litigation; and

**WHEREAS**, the Trustee and Storm Defendant (the "**Parties**"), including Mr. Storm in his capacity as principal of the Storm Defendants, on the terms and conditions contained herein, desire to compromise and settle all of the claims and disputes raised in the Litigation and as it relates to the Trustees' Joint Motion.

**NOW, THEREFORE,** in consideration of the foregoing Recitals and of the mutual agreements, covenants and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed by the Parties as follows:

## SETTLEMENT TERMS

1. **Recitals.** Each and every fact set forth above is an integral part of this Agreement and are incorporated herein by this reference as though set forth in full.

2. **Funds Collected by the Trustee:**

    a. The Storm Defendants, including Mr. Storm in his limited capacity as principal of the Storm Defendants, do not have and will not assert any claim(s), liens upon, and/ or interest in any of the funds collected by the Trustee in the Binanat Bankruptcy Case, including the: Total Funds, Horizon Funds, Arinat Proceeds, Sindre Net Proceeds and Broad Street Proceeds (as those terms are defined in the Litigation);
    b. The Storm Defendants, including Mr. Storm in his limited capacity as principal of the Storm Defendants, withdraw and release their opposition to the Trustees' Joint Motion;
    c. The Storm Defendants, including Mr. Storm in his limited capacity as principal of the Storm Defendants, are not entitled to any distribution in the Binanat Bankruptcy Case, including as a general unsecured creditor;
    d. The Storm Defendants, including Mr. Storm in his limited capacity as principal of the Storm Defendants, waive their rights to file any proof of claim in the Binanat Bankruptcy Case.

3. **Dismissal of Litigation**: Within thirty (30) business days after the date of Court approval of this proposed agreement or within fifteen (15) business days of the Trustee's receipt of the Settlement Amount, whichever is later, or within such other later time as the Parties may agree in writing, the Trustee and the Storm Defendants shall each deliver to the other

a Stipulation of Dismissal ("Stipulation") with prejudice, executed by counsel for the Parties and providing for the dismissal with prejudice of the Litigation as to the Storm Defendants only. Upon the execution and delivery of the Stipulation, the Trustee and Storm Defendants shall promptly file the Stipulation with the Bankruptcy Court for entry in the Litigation

4. **Release of Storm Defendants:** Other than claims arising from this Settlement Agreement, the Trustee, for herself as Trustee, and on behalf of the Estate, hereby releases, acquits and forever discharges Storm Defendant, including Mr. Storm in his limited capacity as the principal of the Storm Defendants, from any and all claims, causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, which the Trustee and/or the Estate may have, or claim to have, now against the Storm Defendant which arise out of, relate to, or are connected with any of the claims asserted by the Trustee against Storm Defendant in the Litigation

5. **Limited Release as to Mr. Storm:** To the extent the Estate had a purported claim against Mr. Storm individually, who is in a Chapter7 Bankruptcy and subject to the automatic stay, the Trustee agrees to withdraw POC 59 and waives the right to file a claim in the Storm Bankruptcy Case.

6. **Release of the Trustee and the Debtor's Estate:** The Storm Defendants do hereby release, acquit, and forever discharge the Trustee (as trustee) and the Debtor's Chapter 7 Estate, and each and every past and present principal, agent, servant, employee, representative and attorney for the Trustee of the Estate, from any and all claims which it may have, or claim to have now, against the Trustee (as trustee), or the Estate, or which may hereafter arise out of, relate to, or be connected with any act of commission or omission of the Debtor, the Trustee and/or the Estate existing or occurring prior to the date of this Agreement. The release contained in this paragraph shall include the release and waiver of Storm Defendant's right, if any, to file a claim pursuant to section 502(h) of the Bankruptcy Code.

7. **Best Efforts to Effectuate this Agreement**. Each Party agrees to use best efforts to effectuate the terms of this Agreement.

8. **No Admission of Liability or Wrongdoing**. It is understood and agreed that this Agreement is being made in connection with the settlement and compromise of disputed claims and that such settlement is not to be construed as an admission or concession of liability by any Party.

9. **Joint Authorship**. This Agreement is the product of the negotiation of all of the Parties. By agreement of the Parties, this Agreement shall be deemed to have been drafted jointly by the Parties, and any ambiguity in this Agreement shall not be construed for or against any party by virtue of the identity of any drafter.

10. **Waiver.** No waiver of any breach of any one or more of the conditions or covenants of this Agreement by any Party shall be deemed to imply or constitute a waiver of any breach

of any other condition or covenant in this Agreement, or a waiver of a breach of the same condition or covenant in the future.

11. **Authority and Binding Effect.** By their signatures below, each respective signatory represents that he or she has the express authority of the Party for which he or she executes this Agreement, and further has the express authority to bind his or her principals to the terms of this Agreement. Each Party represents that it is the sole and current owner of all of the claims released by this Agreement. This Agreement shall be binding upon the Parties and their successors and assigns, and, as to the Trustee, any successor trustee(s) appointed.

12. **Entire Agreement.** This Agreement, and the documents referred to herein, contain the entire understanding of the Parties with respect to the subject matter hereof and there have been no representations, warranties, statements, or promises, express or implied, upon which any Party hereto has relied except as specifically provided in this Agreement.

13. **Amendments or Modifications of this Agreement.** This Agreement may not be amended, modified, or changed, nor shall any waiver of any provision hereof be effective, except by an instrument in writing and signed by all of the Parties and approved by the United States Bankruptcy Court.

14. **Counterparts.** This Agreement may be executed in separate counterparts, including by a "PDF" thereof or by facsimile, with the same effect as if all Parties to this Agreement had signed the same instrument.

15. **Severability.** The Parties agree that, if any single immaterial section or provision of this Agreement should be found unenforceable, it shall be severed and the remaining sections and provisions shall be enforced in accordance with the terms of this Agreement.

16. **Consent.** The Parties represent that they have read this Agreement and that they have had an opportunity to consult with counsel, if they chose, regarding the meaning and effect of this Agreement. The parties further represent that they understand and agree to the terms and conditions of this Agreement and sign it freely of their own will.

17. **Sections and Headings**. The headings and captions used in this Agreement and the organization of the provisions of this Agreement into separate sections are for the purposes of information, ease of reference, and convenience only, and do not themselves limit, expand, construe, or modify the contents of any provision hereof or of the mutual intents hereby expressed.

18. **Governing Law**. This Agreement is to be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of Georgia.

19. **Jurisdiction**. Any dispute, action or proceeding arising out of or relating to this Agreement shall be within the jurisdiction of the Bankruptcy Court.

20. **Covenants Not to Sue**: Other than claims arising from this Settlement Agreement, the Trustee and Storm Defendant, including Mr. Storm in his limited capacity as principal of

the Storm Defendants, mutually covenant that they will not sue, sue further, or otherwise prosecute in any way any person or entity herein above released with respect to any and every Claim released in this Agreement.

21. **No Prior Transfer**: The Parties hereby mutually represent and warrant that there has been no assignment, sale or other transfer or disposition of any interest in any of the claims hereinbefore released and forever discharged.

22. **Required Court Approval**: Upon the execution and delivery of this Agreement, the Trustee shall promptly move the Bankruptcy Court in both the Binanat Bankruptcy Case and the Storm Bankruptcy Cases for the entry of an order (the "Approval Orders") approving this Agreement and the compromise and settlement provided for herein pursuant to Bankruptcy Rule 9019. A Motion pursuant to Bankruptcy Rule 9019 is necessary in the Storm Bankruptcy Case to the extent this settlement pertains to Mr. Storm in his individual capacity. The Parties to this Agreement agree to use their best efforts to obtain the entry of the Approval Orders. Unless otherwise agreed in writing between the Parties, this Agreement and the obligations of the Parties hereto are in all respects contingent upon the Approval Orders becoming a Final Order. For purposes of this Agreement, "Final Order" shall mean an order or judgment of the Bankruptcy Court as entered on its docket that has not been reversed, stayed pursuant to Bankruptcy Rule 8005, or any other applicable rule of civil or appellate procedure, modified or amended, and as to which the time to appeal, petition for certiorari, or seek reargument or rehearing was timely filed, or as to which any right to appeal, petition for certiorari or seek reargument or rehearing has been waived in writing in a manner satisfactory to the Parties, or if a notice of appeal, petition for certiorari, or motion for reargument or rehearing was timely filed, the order or judgment of the Bankruptcy Court has been affirmed by the highest court to which the order or judgment was appealed or from which the reargument or rehearing was sought, or a certiorari has been denied, and the time to file any further appeal or to petition for certiorari or to seek further reargument has expired.

23. **Assignment, Predecessors, Successors and Assigns**: This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their legal representatives, predecessors, successors and assigns.

**IN WITNESS WHEREOF** and in agreement herewith, the Parties have executed and delivered this Agreement, as of the date indicated below.

SIGNATURES CONTINUED ON NEXT PAGE
REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

Date: 7/16/26

ARINAT HOLDINGS, LLC
Robert Storm
By: ROBERT STORM
Its: MANAGER

Date: 7/16/26

SINDRE, LLC
Robert Storm
By: ROBERT STORM
Its: MANAGER

Date: 7/16/26

PV CAPITAL, LLC
Robert Storm
By: ROBERT STORM
Its: MANAGER

KATHLEEN STEIL, AS AND ONLY AS
CHAPTER 7 TRUSTEE

Date: 7/16/26

By: Kathleen Steil
Kathleen Steil only in her capacity as Chapter 7 Trustee
for Binanat Capital, LLC, Case No. 23-55019-LRC

Date: 7/16/26

By: Robert Storm
Robert Storm